**UNITED STATES of America,**
**Plaintiff,**

v.

**1. William CONCEPCION SABLAN,**
**Defendants.**

**Criminal No. 00–cr–00531–WYD.**

United States District Court,
D. Colorado.

Feb. 26, 2007.

Donald R. Knight, Knight & Moses, Littleton, CO, Forrest W. Lewis, Forrest W. Lewis, P.C., Denver, CO, for Defendants.

## ORDER

WILEY Y. DANIEL, District Judge.

THIS MATTER came before the Court on a hearing on November 6 and 7, 2006. The hearing addressed challenges to the prior convictions and incidents the Government intends to use in support of its nonstatutory aggravating factor of future dangerousness and the statutory aggravating factor under 18 U.S.C. § 3592(c). This Order addresses my rulings on the admissibility of the prior convictions and incidents used to support the pertinent aggravating factors, as well as legal issues related to those challenges.

### I. *BACKGROUND*

By way of background, on April 13, 2006, I issued an Order requiring the Government to file a proffer of the evidence it intends to rely on in connection with the incidents it seeks to use in support of the nonstatutory aggravating factor of future dangerousness. On May 10, 2006, I issued a Minute Order stating that "any issues about whether the particular incidents are relevant under the circumstances of this case, the reliability of those particular incidents, and whether the incidents are admissible under 18 U.S.C. § 3593(c)" were

deferred to the hearing that this Order addresses (then set to commence August 28, 2006).

I issued a ruling on the legal challenges in the Phase III motions (challenges to the penalty phase) by Order dated July 6, 2006, 2006 WL 5737199. That Order deferred and/or denied without prejudice challenges made by the Defendants as to the particular incidents and/or convictions, stating that those issues would be addressed at the November hearing. Specifically, the Order:

1) denied without prejudice William Sablan's Motion To Strike NonInstitutional Incidents From Nonstatutory Aggravating Factor Of Future Dangerousness [Wm DP–17] to the extent it sought to strike the specific noninstitutional incidents. The Order stated that the Court would "need to evaluate each incident alleged in the Second Amended NOI to determine whether it is relevant to the issue of future dangerousness in the context of life in prison, whether it is sufficiently reliable, and whether the requirements of 18 U.S.C. § 3593(c) are met, *i.e.,* that the probative value of this evidence is not outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury." (Order of July 6, 2006 at 15–16.)

2) denied without prejudice William Sablan's Motion to Strike Threatening Violence, Low Rehabilitative Potential, and Lack of Remorse From The Government's Notice Of Intent To Seek The Death Penalty [Wm DP–22] to the extent it sought a ruling as to the admissibility of specific evidence. As to threats of violence, the Order stated, "I do not believe that threats should be excluded on a per se basis. Instead, I will decide the admissibility of the specific threats at

issue at the August hearing when I hear them in context." (Order of July 6, 2006 at 16–17.)

3) denied without prejudice William Sablan's Motion To Limit Evidence Of Prior Convictions To The Fact Of Conviction And To Exclude Evidence Of Underlying Conduct [Wm DP–19] to the extent it requested that the Court determine whether the probative value of the convictions is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury pursuant to 18 U.S.C. § 3593(c). The Order also stated that Defendant's argument that admission of the underlying facts as to convictions entered as the result of a plea agreement is unfair because it denies him the benefit of his bargain would be "addressed in context in connection with the actual conviction being considered." (Order of July 6, 2006 at 25.)

4) denied without prejudice William Sablan's Motion To Prohibit The Government From Introducing Unadjudicated Criminal Conduct During the Penalty Phase [Wm DP–24] to the extent it argued that the specific unadjudicated criminal conduct at issue is not sufficiently relevant and reliable and that it should be excluded under 18 U.S.C. § 3593. (Order of July 6, 2006 at 30–31.)

5) denied without prejudice William Sablan's Motion to Strike Institutional Setting Incidents from Future Dangerousness on the Grounds that the Conduct Alleged Is Not Criminal Conduct [Wm DP–18] to the extent it sought to strike specific incidents, stating that the Court needs "to make an individualized determination as to the admissibility of each inci-

dent at the evidentiary hearing." (Order of July 6, 2006 at 31.)

6) deferred a ruling on the entirety of William Sablan's Motion to Strike Incidents Listed in Support of the Government's Nonstatutory Aggravating Factor "Future Dangerousness" on the Grounds They Are Insufficiently Relevant and Reliable [Wm DP–16]. (Order of July 6, 2006, at 32.)

7) denied without prejudice William Sablan's Motion To Prohibit The Use of Prior Convictions Obtained In The Local Courts Of The Commonwealth Of The Northern Mariana Islands On The Grounds That The Federal Death Penalty Act Neither Provides For, Nor Contemplates, Their Use And That They Are Insufficiently Reliable [Wm DP–20] to the extent it argued that the specific prior convictions at issue were unreliable and inadmissible (Order of July 6, 2006, at 36.)

The Government filed its Proffer of Penalty Phase Evidence in Support of Non–Statutory Aggravating Factor of Future Dangerousness of William Concepcion Sablan on July 24, 2006. Defendant filed a response on August 7, 2006, and also filed objections to the proffer based on its incompleteness. By Order dated August 11, 2006, the Government was ordered to file an amended proffer indicating what evidence had been produced in support of the proffer and what evidence had not been produced. On August 25, 2006, Defendant filed supplemental responses to the proffer.

On August 28, 2006, the Government filed its Amended Proffer of Penalty Phase Evidence in Support of Non–Statutory Aggravating Factor of Future Dangerousness of William Conception Sablan. Defendant filed a response on September 11, 2006. The response argues that the amended proffer submitted new evidence that was not in the original proffer, and that such evidence should be stricken as untimely. I deny Defendant's request to strike that evidence, finding that the evidence was tendered sufficiently in advance of the hearing to allow Defendant an adequate opportunity to respond. Thus, I find no prejudice to Defendant as a result of the disclosure of this evidence. However, as discussed later in this Order, any evidence disclosed by the Government to Defendant after the filing of the amended proffer is untimely and cannot be used in the penalty phase of this case.

Also on September 11, 2006, William Sablan filed a Motion for Order Directing the Government to Provide the Court with the Documents, Tapes, and Trial Transcripts Noted in its Amended Proffer in Advance of the November 6, 2006 Hearing. That motion was granted by Order dated September 25, 2006. The Government submitted this evidence to the Court prior to the hearing.

At the hearing, the Government called witnesses who testified about the particular convictions and incidents the Government seeks to use in support of future dangerousness and its statutory aggravating factor under 18 U.S.C. § 3592(c)(2). The Government also tendered a notebook of its exhibits for the Phase III hearing. The evidence was reviewed, and argument was taken by counsel as to the admissibility of the prior convictions and incidents. I now turn to my analysis of these issues.

## II. ANALYSIS

### A. Legal Framework

#### 1. The Federal Death Penalty Act Generally

Under the Federal Death Penalty Act ["FDPA"], if the attorney for the government has filed a notice of intent to seek the death penalty and if the defendant is

found guilty of or pleads guilty to a federal offense that carries the potential of a death sentence, the defendant is entitled to "a separate sentencing hearing to determine the punishment to be imposed." 18 U.S.C. § 3593(b). During this separate hearing, referred to as the sentencing or penalty phase, the same jury that determined the defendant's guilt considers whether the government has sustained its burden of proving the existence of one or more statutorily defined aggravating factors beyond a reasonable doubt. *Id.*, § 3593(c), (d). A finding that an aggravating factor exists must be unanimous. *Id.*, § 3593(d). If the jury finds that the government has not sustained its burden of demonstrating the existence of at least one statutory aggravating factor, the death penalty may not be imposed. *Id.*

If the jury finds that the government has sustained its burden in this regard, the jury must next "consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death." 18 U.S.C. § 3593(e).[1] "Based upon this consideration, the jury by unanimous vote ... shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence." *Id.*

### 2. *The Evidentiary Standard Applicable to Penalty Phase.*

18 U.S.C. § 3593(c) sets out the evidentiary standard that applies during the penalty phase of a capital trial. It provides in pertinent part that "information may be presented as to any matter relevant to the

sentence." *Id.* "Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials *except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.*" *Id.* (emphasis added). Section 3593(c) also states that "[t]he government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death." *Id.*

Courts interpreting the FDPA have held that there are three requirements for admissibility of evidence: relevance, reliability, and that the probative value of the evidence is not outweighed by the danger of unfair prejudice, confusing the issues or misleading the jury. *See United States v. Gilbert,* 120 F.Supp.2d 147, 150 (D.Mass. 2000). I discuss these factors in more detail below.

#### a. *Relevance*

■ As noted previously, § 3593(c) states that the government and defendant may present any information relevant during the penalty phase regardless of its admissibility under the rules governing the admission of evidence at criminal trials. The Supreme Court has made clear, however, that aggravating factors must be "particularly relevant to the sentencing decision" of whether to impose a sentence of life or death. *Gregg v. Georgia,* 428 U.S. 153, 192, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). That is, they must be "*particularly* relevant to the sentencing decision,'

---

**1.** Unlike findings concerning aggravating factors, mitigating factors need be found only by one or more members of the jury and only by a preponderance of the evidence. *Id.,* § 3593(c), (d).

not merely relevant, in some generalized sense, to whether defendant might be considered a bad person." *Gilbert*, 120 F.Supp.2d at 150–51 (quoting *Gregg*, 428 U.S. at 153, 96 S.Ct. 2909).

In other words, relevance, within the meaning of a capital case, has been construed to mean that the evidence must be "sufficiently relevant to the consideration of who should live and who should die." *United States v. Davis*, 912 F.Supp. 938, 943 (E.D.La.1996). Relevance serves the purpose of "enabl[ing] the sentencer to distinguish those who deserve capital punishment from those who do not." *Arave v. Creech*, 507 U.S. 463, 474, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993). "What might be relevant in an administrative disciplinary proceeding, or even in a sentencing hearing where the choices are between varying terms of imprisonment, is not necessarily sufficiently relevant to deciding who should be sentenced to death." *Davis*, 912 F.Supp. at 943; *see also Gilbert*, 120 F.Supp.2d at 151 ("some information that might be admitted in a normal sentencing hearing will be insufficiently reliable for the jury to use in considering whether a defendant should be put to death.").

### b. *Reliability*

Courts also hold that "an aggravating factor be measured in perspective of the fundamental requirement of *heightened reliability* that is the keystone in making 'the determination that death is the appropriate punishment in a specific case.'" *United States v. Friend*, 92 F.Supp.2d 534, 541 (E.D.Va.2000) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (emphasis in original)). "The need for heightened reliability in making that decision is driven by the fact that the death sentence is qualitatively different from any other sentence." *Id.* at 541–42; *see also Gilbert*, 120 F.Supp.2d at 151.

*Friend* noted that the "concept of heightened reliability plays an independently significant role" when the court is assessing a nonstatutory aggravating factor "which, by definition, lacks the stamp of approval that Congress has bestowed upon the statutory aggravating factors." *Friend*, 92 F.Supp.2d at 542. "That is because heightened reliability drives the individualized determination that is fundamental to a constitutionally valid death penalty scheme." *Id.* "And, in ascertaining whether a proposed factor passes the necessarily high bar set for aggravating factors, heightened reliability is the key to a constitutionally defensible 'determination that death is the appropriate punishment in a specific case.'" *Id.* (quotation omitted). *Friend* further held:

> Thus, relevance and heightened reliability, in the context of assessing a nonstatutory aggravating factor in a death penalty scheme, are two sides of the same coin. Together, they assure the twin constitutional prerequisites of affording a rational basis for deciding that in a particular case death is the appropriate punishment and of providing measured guidance for making that determination. Those objectives can only be accomplished if the proposed aggravating factor raises an issue which (a) is of sufficient seriousness in the scale of societal values to be weighed in selecting who is to live or die; and (b) is imbued with a sufficient degree of logical and legal probity to permit the weighing process to produce a reliable outcome.

*Id.* at 543.

In making the determination as to whether evidence offered in support of a nonstatutory aggravating factor is relevant and reliable, some courts have held that the statutory aggravating factors can serve as a framework for the analysis. *See Davis*, 912 F.Supp. at 944 ("[t]he stat-

utory aggravating factors ... provide a ready framework for determining Congressional intent and for evaluating the relevance and admissibility of the proposed nonstatutory aggravating factors .... [i]f a factor would not have been severe enough, *ergo* 'relevant' enough, to warrant consideration of the death penalty in the first place, then it likewise should not be a factor in tipping the scale for death in the last analysis."); *see also Friend*, 92 F.Supp.2d at 544 ("to relax the standards for nonstatutory aggravating factors 'would defeat the goal of guided and measurable jury discretion, and return us to an unconstitutional system where the death penalty is wantonly and freakishly imposed'") (quotation and internal quotation marks omitted); *cf. United States v. Chong*, 98 F.Supp.2d 1110, 1117 (D.Haw. 1999) ("Congress did not intend to limit nonstatutory aggravating factors simply by defining the statutory aggravating factors .... the Court finds that information, to be relevant, must provide some evidence in support of a statutory or nonstatutory aggravating factor alleged by the Government" and "each particular piece of information need not be sufficient, by itself, to prove the alleged aggravating factor beyond a reasonable doubt.").

### c. *Weighing of Probative Value Versus Unfair Prejudice under 3593(c)*

 Finally, even if relevant and reliable, the proffered information may still be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. 18 U.S.C. § 3593(c). As noted by the Second Circuit, this standard is actually more lenient than FED.R.EVID. 403 since that rule allows the exclusion of relevant evidence only if the probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *United States v. Fell*, 360 F.3d 135, 145 (2d Cir. 2004), *cert. denied*, 543 U.S. 946, 125 S.Ct.

369, 160 L.Ed.2d 259 (2004); *see also United States v. Gilbert*, 120 F.Supp.2d 147, 151 (D.Mass.2000) (under § 3593(c), "probative value need not be 'substantially' outweighed by prejudice"). The balancing required by § 3593(c) "has to consider the purpose of the hearing and the finality of the death sentence, if it is imposed." *United States v. Davis*, 912 F.Supp. 938, 943 (E.D.La.1996). "The balance of probative value and unfair prejudice must be weighed more carefully than in normal cases." *Gilbert*, 120 F.Supp.2d at 151.

### 3. *Prior Rulings Relevant to the Legal Framework for Admissibility of these Incidents*

Before turning to whether the specific convictions and incidents are admissible at the penalty phase, should the case proceed to that stage, I address prior rulings that impact and/or guide my findings in this Order. First, I previously ruled that future dangerousness must be evaluated in the context of life in a prison setting. (Order of July 6, 2006 at 14.) Thus, I evaluate the admissibility of the prior convictions and incidents in this context.

I also previously declined to adopt a per se rule limiting prior convictions used in support of aggravating factors to the fact of conviction. (*Id.* at 20–26.) I found that the categorical approach set out in *Taylor v. United States*, 495 U.S. 575, 599, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) did not apply to the FDPA. I further found "[i]t is illogical that courts would allow evidence of unadjudicated criminal conduct, which necessarily requires introduction of the facts (since there is no conviction), and not allow in the facts in connection with an actual conviction. The actual conviction, even if not from federal or state courts in this country, is at least arguably more reliable than unadjudicated conduct." (*Id.* at 21.) By Order dated November 2, 2006,

I denied William Sablan's motion for reconsideration as to this issue.

Also in the July 2006 Order, I declined to issue a per se rule that unadjudicated criminal conduct should be excluded from the penalty phase. I also denied Defendant's argument in his motion seeking to strike the institutional incidents from the future dangerousness aggravating factor that such incidents should be excluded because the aggravating factor is based on criminal conduct. I stated in the Order, "I am not prepared to say as a matter of law that the fact that Defendant engaged in certain unadjudicated incidents in the institutional setting is not relevant to future dangerousness." *Id.* I also note that this issue was addressed in *United States v. Bodkins*, No. CRIM.A. 4:04CR70083, 2005 WL 1118158, at *5 (W.D.Va.2005), which held that ("arguments for future dangerousness, even in the prison context, should not be limited to evidence of dangerousness or bad conduct during past periods of incarceration.").

### 4. *The Applicability of Crawford at the Penalty Phase*

■ Finally, before I turn to the specific incidents, I address the impact and applicability of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *Crawford* held that out of court statements that are testimonial in nature are inadmissible under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross examine the witness. *Id.* at 54, 124 S.Ct. 1354. Defendant argues that some of the evidence used to support the incidents as to future dangerousness is testimonial in nature and that the admission of such evidence would violate his rights under the Confrontation Clause.

Whether evidence is "testimonial" in nature is not specifically defined in *Crawford.* Indeed, the Supreme Court stated therein

that it will "leave for another day any effort to spell out a comprehensive definition of "testimonial." " *Id.* at 68. *Crawford* does, however, provide several examples of evidence that would be construed as testimonial for the purpose of Confrontation Clause analysis. Specifically, the Court held that the Confrontation Clause:

applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' 2 N. Webster, An American Dictionary of the English Language (1828). 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' *Ibid.* An accuser who makes a formal statement to government officials bears testimony in a sense that a person who makes a casual remark to an acquaintance does not Various formulations of this core class of 'testimonial' statements exist: '*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' ... 'extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' ... statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,'. . . .

*Id.* at 51–52, 124 S.Ct. 1354 (internal citations and quotations omitted).

Additionally, *Crawford* states that "[s]tatements taken by police officers in the course of interrogations are ... testimonial under even a narrow standard." *Id.* at 52, 124 S.Ct. 1354; *see also United States v. Lee*, 374 F.3d 637, 644 (8th Cir.

2004) ("casual statements to an acquaintance are not testimonial" nor are "statements to a coconspirator or business records"), *cert. denied,* 545 U.S. 1141, 125 S.Ct. 2962, 162 L.Ed.2d 892 (2005). If statements are deemed to be testimonial in nature, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354.

Defendant contends that certain evidence the Government wants to introduce against him in the penalty phase, including audiotape testimony of witnesses from trials and statements made by victims of crimes to the police, are testimonial and that the Government has not demonstrated that the witnesses are unavailable. Further, Defendant argues that it cannot be assumed that his Confrontation Rights were adequately protected in courts in the Commonwealth of the Northern Mariana Islands and/or that he had an opportunity for meaningful cross examination. Therefore, Defendant contends that the introduction of this evidence against him during the sentencing phase would violate *Crawford* and the Confrontation Clause.

██ ██ The Government appears to concede that the contested statements are testimonial and that *Crawford* is applicable generally to the penalty stage of the trial. Instead, the Government argues that *Crawford* applies only to the eligibility phase of sentencing, and that the penalty stage can be bifurcated into two separate phases consisting of the eligibility phase (where *Crawford* would be applicable) and the selection phase (where *Crawford* would not be applicable).[2]

Turning to my analysis, I must address whether the Confrontation Clause as interpreted by *Crawford* applies to the penalty stage and, if so, whether it applies to both the eligibility and selection phases of the penalty stage. I must also decide whether bifurcation of the penalty stage is appropriate. I first note that I have found no circuit court cases since *Crawford* that address the applicability of the Confrontation Clause to the penalty stage. The cases cited by the parties from various circuits that address this issue were decided prior to *Crawford* and, in my opinion, are not decisive of the issue.[3]

There are, however, two key district court cases that have addressed the issue.

---

**2.** "[T]the eligibility phase determines which class of defendants are statutorily eligible for the death penalty." *United States v. Jordan,* 357 F.Supp.2d 889, 902 (E.D.Va.2005). This is determined by the jury deciding whether the Government has proved that a statutory aggravating factor exists. "In the selection phase, the jury determines what particular sentence should be imposed on the individual eligible defendant." *Id.* This consists of the jury considering whether other aggravating factors exist, whether mitigating factors exist, and weighing the aggravating and mitigating factors to determine what sentence to impose.

**3.** *See, e.g., Szabo v. Walls,* 313 F.3d 392, 399 (7th Cir.2002) (relying on *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) to support its holding that "the Confrontation Clause does not apply to capital sentencing" and noting that while the law

governing sentencing in capital cases has changed significantly since *Williams,* the Supreme Court never questioned or overruled that case); *United States v. Higgs,* 353 F.3d 281, 323 (4th Cir.2003) (assuming, on habeas review, "that the admission of . . . statements would be a violation of Higgs's rights under the Confrontation Clause during the guilt phase . . . such presumed error was not plain in the context of Higgs' sentencing phase" since "[i]t is far from clear that the Confrontation Clause applies to a capital sentencing proceeding"), *cert. denied,* 543 U.S. 999, 125 S.Ct. 627, 160 L.Ed.2d 456 (2004); *see also United States v. Brown,* 441 F.3d 1330, 1361 (11th Cir.2006) (stating that it need not determine whether *Crawford* applies to the penalty phase of a federal capital trial because the challenged testimony was not testimonial in nature), *cert. denied,* —— U.S. ——, 127 S.Ct. 1149, 166 L.Ed.2d 998 (2007).

Both cases hold that the Confrontation Clause as interpreted by *Crawford* is applicable to the penalty stage. *See United States v. Jordan*, 357 F.Supp.2d 889 (E.D.Va.2005); *United States v. Mills*, 446 F.Supp.2d 1115 (C.D.Cal.2006). They reach different results, however, as to whether the Confrontation Clause applies to both the eligibility and the selection phases of the penalty stage.

In *Jordan*, both parties agreed that the admission of a testimonial statement turned on the *Crawford* holding. *Id.*, 357 F.Supp.2d at 898. Indeed, the court noted that "*Crawford* has reordered Confrontation Clause jurisprudence." *Id.* In holding that the Confrontation Clause applied to the penalty stage, the court distinguished between the "two facets" of the deliberative process in the penalty stage: eligibility and selection. *Id.* at 902. The court held:

> [f]rom a constitutional perspective, the eligibility phase is the most critical because it is a necessary prerequisite to the jury's consideration of the death penalty. It encompasses the finding of fact that increases the defendant's authorized punishment from life in prison to death. Accordingly, with the exception of the fact of prior convictions, those intent and aggravating factors which the government intends to rely upon to render a defendant death-eligible under the FDPA are the functional equivalent of elements of the capital offense[ ] and must be charged in the indictment, submitted to the petit jury, and proved beyond a reasonable doubt.

*Id.* (quoting *Higgs*, 353 F.3d at 298). *Jordan* also noted that "no court has applied the teachings of *Ring* beyond the statutory factors at issue in the selection phase." *Id.* at 903. *Jordan* then held, "[c]onsistent with the constitutional safeguards identified by the United States Supreme Court . . ., this Court is of the opinion that with respect to the eligibility phase of the penalty stage of a capital trial, the Confrontation Clause is equally applicable." *Id.*

*Jordan* also noted, "[o]rdinarily, the analysis would end here because typically the penalty phase is a unitary proceeding, encompassing both eligibility and selection." However, it held that a close examination of the governing statute (in that case 21 U.S.C. § 848, which is analogous to the FDPA), "reveals that the statute does not necessarily mandate a single unitary proceeding." *Id.* The court found that the testimonial statements could be used in the selection phase, stating "[u]nlike the eligibility phase, the selection phase is intended to be less structured and less encumbered by strict adherence to the Rules of Evidence." *Id.* *Jordan* concluded that "[u]nless its probative value is substantially outweighed by the danger of unfair prejudice, the jury should 'have as much information before it as possible when it makes the sentencing decision.'" *Id.* (quotation omitted). The court in *Jordan* thus chose to bifurcate the proceedings because "the Government intends to offer evidence which, in this Court's view, is inadmissible on the issue of eligibility but permissible in the selection phase." *Id.* at 903–04.

*Jordan* supports the Government's argument that bifurcation of the two phases of the penalty stage may be appropriate and that if bifurcation occurs, the *Crawford* issue raised with respect to evidence in the selection phase (including consideration of evidence used to support future dangerousness) can be avoided. Other courts have followed *Jordan*. *See United States v. Bodkins*, No. 4:04CR70083, 2005 WL 1118158, at *4 (W.D.Va.2005) (following *Jordan* and noting that "[n]o court has held that *Crawford* applies to the entire penalty proceeding"); *United States v.*

*Johnson,* 378 F.Supp.2d 1051, 1060–62 (N.D.Iowa 2005).

*Mills* is the most recent decision on this issue, and holds that *Crawford* and its holding as to the Confrontation Clause are applicable to both phases of the penalty stage. It conducted a detailed analysis of the issue, discussing the impact of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). It agreed with *Jordan* that *Crawford* and its interpretation of the Confrontation Clause is applicable to the eligibility portion of the penalty phase, which it interpreted as the first two steps of the six steps in that phase. *Mills,* 446 F.Supp.2d at 1127, 1129.[4] It disagreed with *Jordan's* conclusion that the Confrontation Clause does not apply during the selection phase of the penalty stage.

Specifically, *Mills* stated that "*Ring* stands for the proposition that a jury must find, beyond a reasonable doubt, whatever facts are necessary to satisfy the 'eligibility' function of a capital sentencing scheme." *Id.* at 1127. "Absent those findings, the state has no power to impose a sentence of death." *Id.* "However, *Ring* left open the question of whether facts found as part of the 'selection' function must be the subject of jury findings, with all of the attendant constitutional protections." *Id.* In choosing to reject *Jordan's* holding that the Confrontation Clause does

not apply during the selection phase, *Mills* noted that *Jordan's* reliance on the principle that trial courts should exclude more evidence rather than less in the selection phase was flawed. *Id.* at 1129–30. That is because "this call to admit more evidence does not sanction the admission of unconstitutional evidence against the defendant." *Id.* at 1130. *Mills* stated, "while the Court recognizes the policy reasons encouraging the admission of the maximum quantum of evidence during the selection phase, that policy is insufficient to override Defendants' right to confront witnesses during such a critical portion of the capital trial." *Id.*

*Mills* further stated that its "most fundamental difference with *Jordan's* conclusion . . . is that the *Jordan* court failed to adequately address the effects of recent Supreme Court decisions expanding the constitutional significance of factfinding as established by *Ring.*" *Id.* "After analyzing the impact of those decisions . . . the Court is left with the inexorable conclusion that confrontation rights must apply to the entirety of the penalty phase of capital trials, including the selection phase." *Id.* at 1130–31. *Mills* assumed, without deciding, that steps five and six of the selection phase are discretionary findings that are not constitutionally significant. *Id.* at 1134.[5] However, it held that steps three and four of the selection phase—where the jury decides whether any additional statutory factors have been established beyond a reasonable doubt and whether any nonstatutory aggravating factor has been es-

---

**4.** These two steps require the jury to find (1) that the statutory intent factor has been proven beyond a reasonable doubt, and (2) that at least one statutory aggravating factor has been established beyond a reasonable doubt. *Id.* (citing 18 U.S.C. §§ 3591(a)(2) and 3593(c), (d)).

**5.** Steps five and six are whether mitigating factors have been found and whether the aggravating factor or factors found to exist sufficiently outweigh the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death.

tablished beyond a reasonable doubt— "bear many of the hallmarks of constitutionally significant facts falling under the ambit of *Blakely*." *Id.* at 1134–35.

In so finding, the court noted that "the jury is required to find these facts unanimously and beyond a reasonable doubt." *Id.* at 1134. "Further, [t]he jury may consider *only* the factors upon which it has rendered such a finding when it weighs the factors in aggravation and mitigation." *Id.* Also, "a *jury* renders these findings after a contested adversarial hearing that bears many of the features of a trial." *Id.* (emphasis in original). *Mills* found "that these features of the Act render steps three and four significantly different than the judicially found facts that inform a court's calculation of the now non-binding Guidelines." *Id.* The court stated, "[i]n essence, the FDPA completely limits the jury's discretion until it has rendered its findings on the aggravating factors (whether statutory or non-statutory)." *Id.* "Only upon finding these facts is the jury permitted to move on to the more discretionary task of finding the mitigating factors, and the broadly discretionary task of weighing aggravation against mitigation." *Id.*

Accordingly, *Mills* concluded that "all of the alleged aggravating factors—statutory or nonstatutory—are of constitutional significance" and "the jury's factfinding with respect to steps three and four should be accompanied by the same constitutional protections as those which accompany the trial of elements." *Id.* at 1135. "*Crawford v. Washington's* protections apply to any proof of any aggravating factor during the penalty phase of a capital proceeding under the FDPA", and "Defendants . . . must

be afforded the right to confrontation during the selection phase." *Id.* at 1135.[6]

■ Having independently analyzed *Ring, Apprendi, Booker,* and *Blakely,* I agree with *Mills* that under *Crawford,* the Confrontation Clause is applicable at both the eligibility phase and at least a portion of the selection phase. Specifically, I agree with *Mills* that the existence of all the aggravating factors are constitutionally significant facts that should be found by the jury. As noted in *Mills,* Congress assigned the jury broad responsibility under the FDPA in connection with the aggravating factors, mandating that all such factors be found beyond a reasonable doubt in a hearing similar to a trial. 18 U.S.C. § 3593. Further, Congress limited the jury's discretion until it rendered its findings on all the aggravating factors. In other words, under the structure of the FDPA, it is not the finding of a statutory aggravating factor that actually increases the punishment. The fact that actually increases the punishment is the existence of all the aggravating factors found by the jury (taken together) which the jury finds justify a sentence of death. Indeed, the jury is not allowed to recommend a sentence of death until it considers whether *all* the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. 18 U.S.C. § 3593(e).

■ Further, even if *Jordan* is correct that the Confrontation Clause applies only at the eligibility phase, I find that bifurcation of the penalty stage is not the proper

6. *Mills* noted that its holding that *Crawford* "applies to the entire penalty phase of the case does not render the government unable to prove their allegations of future dangerousness." *Id.* at 1130. "It merely requires the

government to provide evidence through witnesses who have first hand knowledge of the events in question, rather than through stacks of silent documents replete with unconstitutional hearsay." *Id.*

remedy in this case. First, the FDPA does not in any way refer to or authorize bifurcation of the penalty phase. Indeed, this was noted by the court's holding in *Mills* that the differing evidentiary standards would require dividing the penalty phase—a procedure not foreseen by the FDPA. *Id.,* 446 F.Supp.2d at 1131 n. 16. I also agree with *Mills* that "[t]here are … troublesome practical issues that would follow from allowing partial application of confrontation in the penalty phase." *Id.* One such issue is that "partial confrontation would invite gamesmanship on the part of the government in allocating statutory aggravators between eligibility and selection." *Id.*

Another issue pointed out by Defendant is the Government's desire to admit testimonial statements to support the statutory aggravating factor related to prior conviction of violent felony involving a firearm (*see* Section II.B.3, *infra*). If I were to bifurcate the penalty stage and allow testimonial evidence only in connection with the eligibility phase, the Government would have to present evidence of this aggravating factor in that phase without reference to the testimonial statements. If the jury determines that the aggravating factor has been established and moves to the selection phase, the Government might then seek to introduce the testimonial statements in support of this same aggravating factor. I believe it would be confusing to the jury to have the evidence about the statutory aggravating factors broken up in this manner.

Accordingly, I find that the Confrontation Clause as interpreted by *Crawford* is applicable during the penalty stage, and that the penalty stage (if the case proceeds to that stage) will not be bifurcated. Testimonial statements must be excluded if they do not meet the requirements for admission of such evidence. With that backdrop in mind, I now turn to the admissibility of specific incidents if the case proceeds to the penalty phase.

**B.** *Admissibility of the Specific Convictions/Incidents Used to Support the Nonstatutory Aggravating Factor of Future Dangerousness*

1. *Admissibility of Noninstitutional Incidents*
 a. *Criminal Case No. 84–69 (Assault and Battery)*

 The Third Amended Notice of Intent to Seek the Death Penalty ["Third Amended NOI"] asserts as to Case No. 84–69 that on or about August 17, 1984, in Saipan, William Sablan and two others burglarized the residence of Victor C. Pangelinan and assaulted him with a knife. Defendant pled guilty to misdemeanor assault in the Commonwealth of the Northern Mariana Islands Trial Court and was sentenced to one year in prison. (Third Amended NOI at 5–6) (*see also* Gov't Ex. 1A.)

The amended proffer states that the Government will present the following evidence in support of this incident:

A. Certified Copies of Court Documents: Negotiated Plea, signed and dated September 27, 1984; Judgment & Commitment dated November 16, 1984, a Promissory Note dated January 3, 1985, signed by William Sablan promising to pay Vic Pangelinan $50.00 per month for three years for injuries suffered by Mr. Pangelinan, his wife, and his minor child; Judgment in Civil Action 85–489, Commonwealth Trial Court, CNMI, dated 1/25/87, Receipts for Payment of Restitution to Vic Pangelinan. (*See* Gov't Exs. 1A–1E.)

B. The testimony of Victor Pangelinan about what happened on the night of the assault at this trial. (Gov't Ex. 1 F.)

C. It is anticipated that the Government will establish identification of the Defendant based on the fact that a joint plea agreement was used for this case and Case 84–68, referenced below, and concurrent sentences were imposed in the two cases. The victim in Case 84–68 knew William Sablan and identified him as his assailant. The Government also may seek to compare fingerprints recently received from an original fingerprint card for Defendant from Saipan dated November 15, 1984 with known prints associated with this case.

I find that this evidence should be excluded under 18 U.S.C. § 3593(c) because its probative value is outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. I agree with Defendant that this conviction which occurred 15 years before the homicide of Joey Estrella is too remote in time to be adequately relevant and reliable. See *United States v. Davis*, No. CR.A. 01–282, 2003 WL 1873088, at *5 (E.D.La.2003) (striking two prior juvenile adjudications, in part, because they were over ten years old and thus remote in time); *United States v. Gilbert*, 120 F.Supp.2d 147, 153 (D.Mass.2000) (any testimony about an incident thirteen years after the fact is not reliable enough to be used at a capital sentencing).

Further, given the remoteness in time, I find that the testimony of the burglary victim would not be sufficiently reliable, *i.e.*, Mr. Pangelinan's ability to recall with precision what happened in 1984, 22 years ago, regarding the role multiple people played in the burglary/assault, is extremely suspect. In addition to the reliability issues, I find that the testimony of Mr. Pangelinan would be unduly prejudicial if admitted. As Defendant points out, the FBI 302 report of Mr. Pangelinan was not generated until June 6, 2006, 22 years after the incident. (*See* Gov't Ex. 1 F.) Discovery does not reveal any reports prepared contemporaneously with the crime, even though the 302 report reflects that Mr. Pangelinan said he was interviewed twice by the police in 1984 (the night of the offense and after the investigation). Without the police reports, interviews and other records generated in connection with the initial investigation, Defendant has no way to know whether the anticipated testimony of Mr. Pangelinan is consistent with those earlier reports and his ability to cross examine this witness would be extremely limited. I also note that certified court documents have not been provided, and the discovery does not contain the information or a plea colloquy.

Based on the foregoing, I find that the evidence about this crime should be excluded at the penalty phase and stricken as unduly prejudicial.[7] Defendant's Mo-

---

7. I also question whether admission of the underlying facts of this conviction, as presented through Mr. Pangelinan and other testimony sought to be introduced by the Government, would deprive Defendant of the benefit of his plea bargain. *See, e.g., Taylor v. United States*, 495 U.S. 575, 601–02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) ("if a guilty plea to a lesser, nonburglary offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary.") In the Plea

Agreement, Defendant pled guilty to a lesser included offense of assault and battery, and two other counts were dismissed. (Gov't Exs. 1A and 1 B.) It is unclear what those counts were, since the information was not provided. The fact that Mr. Pangelinan is expected to testify to being cut with a knife and an assault on his wife where a knife was held to her throat could be more consistent with counts that were dismissed such as an aggravated assault charge. This would be prejudicial and confusing to the jury. Finally, the prom-

tion To Strike Incidents Listed In Support Of The Government's Nonstatutory Aggravating Factor "Future Dangerousness" On The Grounds They Are Insufficiently Relevant And Reliable To Submit To The Jury [Wm DP–16] is thus granted as to this criminal case.[8]

b. *Criminal Case No. 84–68 (Burglary)*

▆▆▆ The Third Amended NOI asserts that on or about August 17, 1984, in Saipan Defendant (along with two others) burglarized Lovi's Emporium Store and robbed, tied up and assaulted the storekeeper George Ramnani, kicking and punching him in the face and body. Defendant pled guilty to burglary in the Commonwealth of the Northern Mariana Islands Trial Court and was sentenced to five years in prison, to run concurrently with the sentence imposed in Case No. 84–69 (discussed above). (Third Amended NOI at 6.)

The amended proffer states that the Government will present the following evidence in support of this incident:

A. Certified Copies of Court Documents: Negotiated Plea, signed and dated September 17, 1984 and Judgment & Commitment Order dated November 16, 1984. (Gov't Exs. 1A and 1B.)

B. The testimony of the victim of the burglary, Ghanshyam (George) Ramnani. (Gov't Ex. 1G.)

C. It is anticipated that the Government will establish identification of the Defendant through the victim. The Government may also seek to have fingerprints from a fingerprint card for William Sablan from Saipan dated November 15, 1984 compared with known prints associated with the case.

I find that this case and the evidence related to it should be excluded at the penalty phase under 18 U.S.C. § 3593(c) because the probative value is outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. I first note that this case is related to Case No. 84–69 discussed above, and was jointly dealt with by the trial court in relation to the plea of guilty and judgment. (Gov't Exs. 1A and 1 B.) As such, it would be difficult to admit the plea agreement and judgment in one case but not the other, given the joint nature of these documents.

Second, I find that this conviction, like Case No. 84–69, that occurred 15 years before the homicide of Joey Estrella is too remote in time to be sufficiently relevant and reliable. *Gilbert,* 120 F.Supp.2d at 153; see also *Davis,* 2003 WL 1873088, at *5; Given the remoteness in time, I find that the testimony of the burglary victim is not sufficiently reliable and would be unduly prejudicial, *i.e.,* Mr. Ramnani's ability to recall with precision what happened in

---

issory note and related documents (Exs. 1 C and 1 D) do not appear to be part of the criminal case but instead are related to a separate civil claim for which there is little information. As such, I find that those documents are not sufficiently reliable.

**8.** I recognize that other motions filed by Defendant also sought to strike these institutional incidents, such as William Sablan's Motion to Strike Institutional Setting Incidents from Future Dangerousness on the Grounds that the Conduct Alleged Is Not Criminal Conduct [Wm DP–18]. *See* other motions discussed at

pages 2–3, *supra.* However, since those motions were denied without prejudice, I decline to reopen them. The same is true as to the noninstitutional incidents. Instead, I address whether particular crimes or incidents should be admitted in connection with the more general motion—Defendant's Motion To Strike Incidents Listed In Support Of The Government's Nonstatutory Aggravating Factor "Future Dangerousness" On The Grounds They Are Insufficiently Relevant And Reliable To Submit To The Jury [Wm DP–16]. I have, however, considered the arguments made in all the motions in connection with my ruling.

1984 regarding the role multiple people played in the burglary would be extremely suspect. Defendant also notes that certified court documents and the plea colloquy have not been provided, and the discovery does not reveal any contemporaneously prepared reports of the crime. Accordingly, as with Case No. 84–69, Defendant's ability to cross examine Mr. Ramnani would be extremely limited and would prejudice the Defendant.

I also note that Mr. Ramnani is expected to testify that Defendant and his cohorts attempted to strangle him with a telephone wire, tied him up, hit him in the side of the face with a shotgun and stabbed him in his side to see if he was still alive. Mr. Ramnani states in the 302 report that he could not speak for three months due to the strangulation, and that after Defendant was arrested his brother threatened to kill Mr. Ramnani for putting Defendant in jail. (Gov't Ex. 1 G.) The plea agreement and judgment, however, do not reference the strangulation and other conduct described by Mr. Ramnani. (*See* Gov't Exs. 1A and 1 B.) Defendant pled guilty and was sentenced only to burglary, and all other counts were dismissed. *Id.* I find that admission of this testimony by Mr. Ramnani would be extremely prejudicial as it would appear to go only to dismissed counts. Defendant would also be deprived of the benefit of his plea bargain. *See, e.g., Taylor v. United States,* 495 U.S. 575, 601–02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990).

Finally, I agree with Defendant that if the conviction were limited to the facts in the plea agreement, *i.e.,* burglary, this would have no relevancy to dangerousness in a prison setting. It also would not be of sufficient gravity for the jury to consider in connection with a statutory aggravating factor, including future dangerousness, since burglary involves a crime against a person. *See United States v. Gilbert,* 120

F.Supp.2d 147, 153 (D.Mass.2000) ("consideration of relatively minor misbehavior, however disturbing, would undermine the seriousness of the death penalty decision"); *United States v. Peoples,* 74 F.Supp.2d 930, 932 (W.D.Mo.1999) ("tampering and dealing in stolen goods ... are pernicious distractions ... in considering whether a defendant shall live or die"). Defendant's Motion To Strike Incidents Listed In Support Of The Government's Nonstatutory Aggravating Factor "Future Dangerousness" On The Grounds They Are Insufficiently Relevant And Reliable To Submit To The Jury [Wm DP–16] is thus granted as to this criminal case.

c. *Criminal Case No. 85–49 (robbery)*

■ The Third Amended NOI asserts that on or about May 20, 1985, in Saipan, Defendant robbed a group of Japanese tourists at knife and gun point. Defendant was convicted in the Commonwealth of the Northern Mariana Islands Trial Court of armed robbery and use of a knife but acquitted of assault with a deadly weapon. He was sentenced to six years in prison. (Third Amended NOI at 6.)

The amended proffer states that the Government seeks to admit the following evidence in support of this case:

A. A Certified Copy of Court Document: Judgment & Sentence dated August 26, 1985. (Gov't Ex. 2A.)

B. The Government's initial Proffer stated that it wishes to present Audio Tape Recordings /Transcripts of Trial Testimony. The amended proffer stated that these audio tapes could not be located. However, Defendant advised in his brief filed November 1, 2006, that the Government received the tapes and produced them to Defendant on October 24, 2006.

C. It is anticipated that the Government will establish identification

based on the fact that the sentence was imposed concurrently with the sentences in Cases 84–68 and 84–69, referenced above, and the ability of the victim in case 84–69 to identify the defendant.

 I find that this criminal case can be presented by the Government in support of future dangerousness, but the Government is limited to evidence of the certified copy of the court document. The audio tape recordings/ transcripts of trial testimony are not admissible on the basis that they were not timely provided to Defendant.[9]

As to the certified copy of the judgment, I first note that there are no issues in connection with a plea bargain or the Defendant being deprived of the benefit of the bargain, since the jury found Defendant guilty of this crime. Further, since the evidence is limited to the fact of conviction, *i.e.*, the judgment, there is no need for an investigation into the underlying facts, as argued by Defendant.[10]

I further find that the crime is of sufficient gravity to be admitted in connection with a nonstatutory aggravating factor, and is probative of future dangerousness in prison. The jury found Defendant guilty of robbery and also found that Defendant was armed with a dangerous weapon in the commission of the robbery. These are violent crimes against persons that are highly probative to the issue of whether Defendant will be a future threat in prison to other inmates or prison officials. The crime shows that if given an opportunity, Defendant may commit a violent crime against another person in prison. In other words, I find that this violent crime is relevant to Defendant's willingness to commit further acts of violence against persons in the prison, whether it be prison guards or other inmates. *See United States v. Hargrove*, No. 03–20192–CM, 2005 WL 2122310, at *6 (D.Kan.2005) (criminal acts of violence may be relevant to a defendant's predicted behavior in prison).

While the crime is remote in time, I find that the evidence is more reliable than the evidence submitted in connection with Case Nos. 84–68 and 84–69, since it re-

---

**9.** After Defendant filed a pleading objecting to the adequacy of the initial proffer, the Government was ordered to file an amended proffer by August 28, 2006. That proffer was to include a statement indicating what evidence had been produced in support of the proffer as well as what evidence was not been produced. This evidence was not produced in connection with either proffer. Further, it was not produced for the Court to review before the hearing. (*See* Order of September 25, 2006.) I find that these audiotapes were produced too late for the Defendant or the Court to be able to adequately assess their reliability and address them at the hearing. Indeed, the proffers did not even inform Defendant as to who the victims were in connection with this crime. It would be difficult, if not impossible, for Defendant at this late stage of the litigation to be able to adequately assess the crime, the adequacy of the investigation, the reliability of the transcripts and any translation of same, the reliability of the

victims and witnesses at trial, and other issues related to these tapes. Finally, I note that these tapes also must be excluded under *Crawford* because they are testimonial statements and the Government has not shown that the witnesses are unavailable and/or that Defendant had a prior opportunity to cross examine the witness.

**10.** The authority cited by Defendant on this point is inapposite. For example, in *Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005), the death sentence was reversed where defense counsel rendered ineffective assistance of counsel by failing to review the entire file related to a prior conviction involving the use or threat of violence, including the transcript of the rape victim's trial testimony. The evidence went well beyond the fact of conviction, and the evidence that did exist was improperly reviewed by counsel.

flects a judgment rather than a plea bargain. Finally, I find that the probative value of the conviction outweighs any danger of unfair prejudice, confusion of the issues or misleading the jury.[11] Defendant has not identified how this crime is unduly prejudicial, and I find that any prejudice which comes from the crime is outweighed by its probative value.[12] Accordingly, Defendant's Motion To Strike Incidents Listed In Support Of The Government's Non-statutory Aggravating Factor "Future Dangerousness" On The Grounds They Are Insufficiently Relevant And Reliable To Submit To The Jury [Wm DP–16] is denied as to this criminal case.

d. *Criminal Case No. 96–235 (Robbery)*

■ The Third Amended NOI asserts that on or about September 29, 1996, in Saipan, Defendant robbed two Japanese people at knife point. Victim Kiyoshi Nemoto gave a statement that he and his friend were accosted on a golf course by a masked man holding a knife in his hand and demanding money. During the encounter, the man pulled his arm back as if to throw his knife at the victim. After a trial to the jury, Defendant was convicted in the Superior Court of the Commonwealth of the Northern Mariana Islands of robbery and acquitted of assault with a deadly weapon. He was sentenced to 10 years in prison with five years suspended. After his arrest in this case, the Government states that Defendant escaped from detention and was at large for two days before being rearrested. (Third Amended NOI at 6–7.)

The amended proffer states that the Government seeks to admit the following evidence in support of this case:

A. Certified Copies of Court Documents: Amended Superseding Information dated September 10, 1997; Special Verdict Forms, Count I and Count II, dated December 15, 1997; Special Verdict, Count II, dated December 15, 1997; Judgment of Conviction dated December 17, 1997; and Sentence Order dated February 26, 1998. (Gov't Exs. 3A–D.)

B. Audio Tapes and Transcripts of trial testimony of victims Kiyoshi Nemoto and Yasuo Ono. Specifically, the Government seeks to admit sixteen audio tape recordings of trial proceedings and sworn testimony received from the Clerk of the CNMI Superior Court in Saipan and the transcripts. Of those, the Government may offer the direct testimony of Mr. Nemoto, witness Juan Diaz, and Detective Joseph Aldan. (Gov't Exs. 3E, 3E1, 3F, 3F1, 3G, 3G1, and 3N.)

C. Theodora SN Decena, Deputy Clerk 3, Office of the Clerk of the Court,

---

**11.** To the extent the Judgment reflects other prison time served by Defendant or the fact that the sentence was to run concurrently with Case Nos. 84–68 and 84–69, this portion of the Judgment can be redacted to avoid any undue prejudice to Defendant. The Government shall thus redact this Judgment if it wishes to present it at the penalty phase.

**12.** *See United States v. Taylor*, No. 04–CR–160, 2006 WL 3359280, at *3 (E.D.Tenn. 2006) (Defendant has failed to identify any specific prejudice he believes will flow from admission of this evidence. For this reason the Court presumes Defendant is relying upon the general prejudice resulting from any jury learning of other bad acts of a defendant. Even if the Court concluded such a danger was present, the Court would have to conclude the danger of unfair prejudice was so great it would likely result in the jury reaching its decision on an improper basis, generally an emotional basis. There is nothing about this evidence that at this point suggests a jury would abandon its obligation to decide the case on the particular facts and law before it and decide the case out of its outrage, horror, or disgust with learning Defendant may have made an effort to escape from custody.).

CNMI Superior Court, may be called as a witness at the penalty phase to authenticate the tape recordings. The Government also may call a representative of Javernick and Stenstrom, Certified Shorthand Reporters, to testify regarding the preparation of the transcripts.

D. Testimony of a number of other witnesses as to the investigation of the crime, including Detective Diwain A. Stephen, Task Force Officer for the Saipan Drug Enforcement Administration office, and formerly an officer with the Department of Public Safety, Saipan; Detective Joaquin Salas, an officer with the Department of Public Safety, Saipan; Jesse Seman, Department of Public Safety; Arnold K. Seman, currently Chief of Staff for the Lieutenant Governor, and formerly an officer with the Department of Public Safety in Saipan; Joseph H. Aldan, formerly a Detective with the Department of Public Safety, Saipan, and lead investigator in this case; and Boating Safety Officer Jack Somol. (*See* Gov't Exs. 3H–3O.)

E. It is anticipated that the Government will establish identification through witnesses who identified Defendant. In addition, it is asserted that Defendant was connected to the robbery based on the recovery of the victims' backpacks and waist pouches from the water near where he was hiding, the recovery of currency hidden in a crack in the cave where he was found, and the recovery of other items on the ocean floor. A further basis for identification may be the testimony of Robert J. Steinborn, formerly an Assistant Attorney General in Saipan and the prosecutor at the trial. The Government may also seek to have fingerprints from a fingerprint card for William Sablan from case number 96–235 compared with known prints on file in the case before the Court. (Gov't Ex. 3P.)

F. Interviews of the victims, Mr. Ono and Mr. Nemoto, who were contacted in Japan. (Gov't Exs. 3H.) The Government asserts that these witnesses are not willing to come to the United States to testify, although they are willing to be deposed in Japan.

I find that some evidence related to this crime will be admissible at the penalty phase (if it is held), and that some of the evidence is barred pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). First as to *Crawford*, I find that the audio tapes and transcripts are testimonial in nature, since they involve prior testimony at a formal trial. *Id.* at 68, 124 S.Ct. 1354. I also find that the interviews of Mr. Ono and Mr. Nemoto by police officials and/or the FBI regarding the robbery are testimonial in nature, as they are formal statements given to the police to be used prosecutorially. Indeed, the Government has not contested Defendant's assertion that these statements are testimonial. Accordingly, this evidence is inadmissible at the penalty stage unless the Government can show that the witnesses are unavailable and that Defendant had a prior adequate opportunity to cross examine the witnesses. The Government has not made this showing to date.[13]

---

**13.** I also find that Defendant has raised reliability issues about the tapes and transcripts as he argues that there are gaps in the testimony transcribed and that there are a multitude of "inaudible" entries. He also has raised reliability issues about the trial, which was con-

However, I find that the other evidence sought to be admitted by the Government about this crime is probative to future dangerousness, and the probative value of the evidence is not outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. First, I find that the crime itself is probative of future dangerousness, since it is a violent crime against persons where Defendant was found to have used a deadly weapon. I find such a violent crime extremely relevant to the issue of Defendant's danger to others in the prison setting. I further find that the probative value of evidence related to this crime outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury, and that Defendant has not adequately shown prejudice. *See United States v. Taylor,* No. 04–CR–160, 2006 WL 3359280, at *3 (E.D.Tenn.2006).

I also find that the testimony of witnesses related to the investigation and the threats made by to Defendant to the officers are probative and that the probative value of the evidence outweighs the danger of unfair prejudice, confusion of the issues or misleading the jury. This evidence ties Defendant to the crime, and shows why the officers/officials believed that Defendant was the assailant. It also shows aggressive behavior on the part of Defendant as to the officers/officials investigating the crime which I find is probative of whether Defendant will be a danger to others in prison. While Defendant argues that this testimony is "much ado about nothing" and that some of the evidence "is frighteningly suspect as to its credibility" [14], I find that these arguments can be adequately addressed through cross examination.[15] Accordingly, Defendant's Motion To Strike Incidents Listed In Support Of The Government's Nonstatutory Aggravating Factor "Future Dangerousness" On The Grounds They Are Insufficiently Relevant And Reliable To Submit To The Jury [Wm DP–16] is denied as to this criminal case.[16]

### 2. Institutional Incidents

#### a. Criminal Case No. 97–133 (Assault and Battery)

The Third Amended NOI asserts that on or about February 8, 1997, in the Detention Facility, Department of Public Safety, Susupe, Saipan, Commonwealth of the Northern Mariana Islands, Defendant was involved in a struggle with officers when he refused to be returned to his cell. During the struggle, Defendant is alleged to have cut Officer Joaquin Camacho with a piece of metal he had hidden in his hand. Defendant pled guilty to assault and bat-

---

ducted in the Commonwealth of the Northern Mariana Islands. For example, there were only six jurors, the prosecutor was allowed to file an amended information on the first day of trial, and the circumstances surrounding Defendant's identification were allegedly suspicious. (*See* William Sablan's Resp. to the Govt's Amended Proffer of Penalty Phase Evidence at 14–15.) Further, as to the recent interviews of the victims, I agree with Defendant that the Government should not be allowed to use these interviews to establish facts that go beyond the conviction. In other words, the Government should be required to call these witnesses live regarding the underlying facts about the crime to satisfy the reliability issues dictated by *Crawford.*

14. William Sablan's Response to the Government's Amended Proffer of Penalty Phase Evidence at 17.

15. I do have concerns as to whether some of the evidence of the numerous witnesses the Government intends to call may be cumulative. That issue will, however, need to be sorted out at trial when the evidence is heard in context.

16. However, to the extent that evidence regarding this crime includes an allegation that William escaped from detention after his arrest in this case, this evidence will not be admitted. Nothing relating to this alleged escape was included in the proffer and I find that this evidence is unduly prejudicial.

tery on May 12, 1998. (Third Amended NOI at 7.)

The amended proffer states that the Government seeks to admit the following evidence in support of this case:

A. Certified Copies of Court Documents: Plea Agreement dated April 21, 1998 and signed by William Sablan; Judgment and Commitment Order dated May 12, 1998. (Gov't Exs. 4A and 4B; *see also* Gov't Ex. 4C—report of the incident by Jesus Deleon Guerrero.)

B. Testimony of a number of other witnesses, including Ralph Rangamar and Alex Matteo, formerly correctional officers with the Department of Public Safety, Saipan and Robert J. Steinborn, formerly an Assistant Attorney General in Saipan and the prosecutor in this matter.

I find that evidence regarding this crime is probative as to future dangerousness, and that the probative value outweighs the danger of unfair prejudice, confusion of the issues or misleading the jury. Accordingly, Defendant's Motion To Strike Incidents Listed In Support Of The Government's Nonstatutory Aggravating Factor "Future Dangerousness" On The Grounds They Are Insufficiently Relevant And Reliable To Submit To The Jury [Wm DP–16] is denied as to this incident.

I find that this evidence is highly relevant to proof of future dangerousness in the prison setting. It shows that when given an opportunity, Defendant may attempt to harm prison officials. Indeed, Defendant is alleged to have actually harmed Officer Camacho during a physical struggle where prison officials were trying to get Defendant into his cell. *See Kelly v. South Carolina*, 534 U.S. 246, 253, 122 S.Ct. 726, 151 L.Ed.2d 670 (2002) ("evidence of violent behavior in prison can raise a strong implication of 'generalized . . . future dangerousness' "); *United States v. Sampson*, 335 F.Supp.2d 166, 225–226 (D.Mass.2004) ("[p]ast violence by a defendant in prison is relevant evidence that a prosecutor could use to prove future dangerousness . . . . [p]ast prison misconduct of a potentially violent nature is also relevant . . . . [i]n this case, the government introduced evidence that the defendant had . . . possessed 'shanks' (sharpened instruments) in prison . . . . [o]ther courts have considered this sort of evidence in evaluating the sufficiency of the evidence concerning to future dangerousness . . . . [t]hreats to harm prison guards and other officials are also relevant to future dangerousness"); *United States v. O'Driscoll*, 250 F.Supp.2d 432, 442 (M.D.Pa.2002) (videotapes showing that defendant refused to cuff-up and return to his cell when ordered to do so by correctional staff, assembly of a use of force team to subdue defendant and his charge and resistance reveals that given the opportunity defendant would assault correctional staff and is probative of future dangerousness); *United States v. Grande*, 353 F.Supp.2d 623, 640 (E.D.Va. 2005) (relevant evidence "including serious assaults on or threats to fellow inmates or correctional staff" would be admitted as to future dangerousness); *see also United States v. Chong*, 98 F.Supp.2d 1110, 1122– 27 (D.Hawai'i 1999) (admitting evidence of assaults of guards and inmates).

Further, the testimony is expected to show that Defendant managed to get some keys from an officer's pocket, which he refused to relinquish for a period of time. This conduct is also relevant to future dangerousness, since it shows that Defendant may, if given an opportunity, confiscate items which may prove useful to him to escape from his cell or which would require the intervention of correctional officers to retrieve.[17]

**17.** To the extent Defendant objects to the testimony of Alex Matteo because he was not

There are no *Crawford* issues as to the testimony of the witnesses the Government intends to offer. There may be a *Crawford* issue with respect to the report of Jesus Deleon Guerrero, as the Government does not indicate that he will be a witness at trial. I leave to the penalty phase of the trial, however, the issue of whether this is testimonial in nature and whether *Crawford* otherwise applies, since I conclude that this issue has not been adequately briefed.

To the extent Defendant objects to admission of this evidence because he was being held in a less secure detention facility in Saipan, this can be adequately addressed on cross-examination. Similarly, Defendant can raise on cross the fact that he entered a plea agreement and what the basis of that agreement was. To the extent that Defendant asserts that the testimony of Ralph Rangamar and/or Alex Matteo will go beyond the offense of conviction and deny him the benefit of the plea agreement, this can be raised at trial where I can consider the objection in the context of an adversary proceeding.[18]

### b. *Incident Report No. 731923*

■ The Third Amended NOI asserts that on or about November 18, 1999 in the Federal Correctional Institution (FCI), Florence, Colorado, Defendant refused to cooperate with officers and was removed from his cell and placed in four-point restraints. The defendant then broke free of the metal handcuffs on both of his hands. (Third Amended NOI at 7.)

The amended proffer states that the Government seeks to admit the following evidence in support of this case:

A. The testimony of Senior Officer J.A. White, who is expected to testify that William Sablan had been placed in a holding cell at FCI, Florence, Colorado in four-point restraints. While the defendant was so restrained, Officer White watched him break the handcuffs restraining both of his hands. (*See* Gov't Ex. 6A—Incident Report.)

I find that this incident is probative of future dangerousness in prison, and that the probative value of the evidence outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury. While the incident was not necessarily an act of violence and it did not result in any reported injury or harm, it shows that if given the opportunity Defendant poses a threat to correctional officers and/or staff. This is because he does not obey orders that are meant to ensure the safety of staff, *i.e.*, remaining in restraints. While there is no evidence tendered by the Government that the BOP was required to take any action in connection with this particular incident, other similar incidents by William Sablan have required that use of force teams be employed to restrain Defendant. All of this is relevant to future dangerousness. *See United States v. O'Driscoll*, 250 F.Supp.2d 432, 442 (M.D.Pa.2002).

Defendant has not shown any specific prejudice that would be incurred through introduction of this incident, and I find

---

provided a copy of his report in discovery, this can be raised and addressed at trial. I note, however, that the Government's Exhibits from the Phase III hearing contain only a report of Mr. Rangamar.

**18.** Defendant also objects to the proposed testimony that he caused some damage in the

facility and that a piece of ironwork was missing from the padlock on the cell. He asserts that property damage is irrelevant to the jury's life and death decision. I reject this argument, since I find that the alleged property damage is interconnected with the assault on Officer Camacho and is thus relevant.

that the incident is not unduly prejudicial. *See Taylor*, 2006 WL 3359280, at *3. Accordingly, Defendant's Motion To Strike Incidents Listed In Support Of The Government's Nonstatutory Aggravating Factor "Future Dangerousness" On The Grounds They Are Insufficiently Relevant And Reliable To Submit To The Jury [Wm DP–16] is denied as to this incident.

### c. *Incident Report No. 736490*

 The Third Amended NOI asserts that on or about December 5, 1999, at FCI Florence, Defendant became angry when directed to stand for a count. He then verbally threatened an officer, and, brandishing a razor blade, threatened to kill the officer and to cut anyone who opened his cell door or the food slot in his door. He repeatedly refused to relinquish the weapon or allow staff to enter the cell until a five-man team arrived and removed him from the cell. (Third Amended NOI at 7–8; *see also* Gov't Ex. 7A—Incident Report.)

The amended proffer asserts that the Government will present the following evidence in support of this incident.

A. Testimony of Correctional Officer Ron Serna and Senior Officer Specialist J.J. Masopust.

B. Videotape of use-of-force action depicting a use-of-force team preparing to respond to Defendant's cell and their placement of the Defendant in ambulatory restraints. Defendant voluntarily agreed to be handcuffed after Lt. Ed Russell talked to him, so forced removal by the team was not necessary. Defendant is shown being searched for a weapon, and his statements complaining about his treatment can be heard. This tape can be authenticated by a custodian of records from BOP. (*See* Gov't Ex. 7B.)

I find that evidence regarding this incident should not be stricken as it is probative on the issue of future dangerousness in prison. I further find that the probative value of this evidence outweighs any unfair prejudice, confusion of the issues or misleading of the jury.

This not a mere threat of violence, but involved affirmative conduct by Defendant that required the mobilization of a use-of-force team at the BOP to enter Defendant's cell and attempt to restrain Defendant. Further, the evidence shows that Defendant may have had a weapon (a razor), and was threatening to use it to harm an officer. The fact that the razor was not a prohibited item, as argued by Defendant, misses the point. The razor, even if not prohibited, could have been used as a weapon and could have caused significant harm to officers. Also, the fact that Defendant's conduct did not result in harm to anyone is not the relevant inquiry; instead, the relevant issue is that Defendant's conduct placed the use-of-force team at risk by requiring them to enter the cell to subdue him and take away a possible weapon. As such, Defendant's conduct placed the officers at risk. Similar conduct in the future could pose a continuing and serious threat to the safety of others. *See United States v. Sampson*, 335 F.Supp.2d 166, 225–226 (D.Mass.2004); *United States v. O'Driscoll*, 250 F.Supp.2d 432, 442 (M.D.Pa.2002).[19]

---

**19.** In so ruling, I recognize that the testimony of Ron Serna regarding the alleged threats made to him by Defendant would not, ordinarily, be very probative on the issue of future dangerousness, since the threats were illusory and made while Defendant was in the cell. See *United States v. Davis*, 912 F.Supp. 938, 945 (E.D.La.1996). However, I find that Serna's testimony is admissible since it is related and intertwined with Defendant's subsequent conduct that caused a use-of-force team to be called.

■ Defendant also asks that the videotape of the use-of-force team be excluded under § 3593(c). I find that the issues raised by Defendant about the videotape can be and should properly brought out on cross-examination. Questions about whether Defendant even had a razor, since it was not found, and the fact that the use-of-force team did not actually have to have to enter the cell to forcibly handcuff Defendant since he agreed to be handcuffed, do not render this videotape so unfair that its probative value is outweighed by the danger of unfair prejudice. I also find that the videotape is extremely probative as to future dangerousness and should be admitted. *O'Driscoll*, 250 F.Supp.2d at 442.

Accordingly, I decline to strike this incident, finding it is probative as to future dangerousness. Defendant's Motion To Strike Incidents Listed In Support Of The Government's Nonstatutory Aggravating Factor "Future Dangerousness" On The Grounds They Are Insufficiently Relevant And Reliable To Submit To The Jury [Wm DP–16] is denied as to this incident.

d. *Incident on January 19, 2001*

■ The Third Amended NOI asserts that on or about January 19, 2001, in the SHU at the Federal Correctional Institution at Englewood, Colorado (FCI–Englewood), Defendant detached a metal desk from his cell wall and beat the desk against the cell door. During this same incident, he threatened to beat and kill another inmate. (Third Amended NOI at 8; *see also* Gov't Ex. 8.) The amended proffer states that the Government will present the testimony of Lt. D. Thompson in support of this incident.

I find that evidence about these incident reports is admissible at the penalty phase (if the case proceeds to that stage) under 18 U.S.C. § 3593(c) as it is probative on the issue of future dangerousness in prison. I further find that the probative value of this evidence outweighs any unfair prejudice, confusion of the issues or misleading of the jury.

This evidence is not simply about mere threats as argued by Defendant. Instead, it is anticipated that Officer Thompson will testify that he was requested to provide immediate assistance to officers in the SHU at FCI, Englewood because Defendant was extremely agitated and out of control. Defendant had detached the metal desk from the wall of his cell and was using it as a battering ram against the door of his cell. He was screaming and crying and threatening to injure and kill inmate Samuel Robinson. Defendant was put into restraints and removed from his cell.

The conduct of Defendant that Officer Thompson is expected to testify about shows a significant level of aggression which is highly probative of future dangerousness. The level of aggression and agitation required correctional officers to potentially put themselves in harm's way by going into Defendant's cell and restraining him. This placed the officers in significant danger, particularly given Defendant's use of a heavy metal desk in demonstration of his anger. The fact that an officer was not actually harmed is not dispositive in my opinion; instead, it is the fact that Defendant was so out of control that he *could* have harmed someone. A repeat of this behavior in the future could cause someone harm, and is thus relevant to show that Defendant could be a future danger in prison. *See Sampson*, 335 F.Supp.2d at 225–26; *O'Driscoll*, 250 F.Supp.2d at 442. Further, Defendant has not made an adequate showing of prejudice, and I find no undue prejudice would be incurred to Defendant if this incident is admitted. *See Taylor*, 2006 WL 3359280, at *3.

Accordingly, I decline to strike this incident, finding it probative of future danger-

ousness. Defendant's Motion To Strike Incidents Listed In Support Of The Government's Nonstatutory Aggravating Factor "Future Dangerousness" On The Grounds They Are Insufficiently Relevant And Reliable To Submit To The Jury [Wm DP–16] is denied as to this incident.

### e. *Incident on February 9, 2001*

 The Third Amended NOI asserts that on or about February 9, 2001, in the SHU at FCI–Englewood, Defendant became angry at prison staff for removing trash and old fruit from his cell and threatened the staff member, saying "You had better respect me, because I am not like the rest of these guys in here and I will fuck you up, you motherfucker." (Third Amended NOI at 8; *see also* Gov't Ex. 9.) The amended proffer states that the Government will present the testimony of Senior Officer S. Brown in support of this incident.

I find that evidence related to this incident should be excluded pursuant to 18 U.S.C. § 3593(c) since I find that the probative value of this evidence is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Unlike other incidents which I have admitted, this conduct does not involve an attempt to harm prison officials. Further, it does not involve behavior that imposes a serious risk of harm to officials. Instead, the conduct involves only threatening words which, when viewed in context, show mere bravado on the part of Defendant. At the time these threats were made, Defendant was in a locked cell and was talking to officers outside the cell. Any threats made to the officers in those circumstances are illusory. As such, the incident is not particularly probative of future dangerousness in prison, and is of insufficient gravity to be relevant to the issue of whether Defendant should live or die. *See United States v. Davis,* 912 F.Supp. 938, 945 (E.D.La.1996).

The Government argues, however, that these words, even without the profanity, provide insight into Defendant's view of himself and the importance he places upon being respected. This argument is without merit. The fact that Defendant places importance on being respected does not necessarily mean that Defendant will be a future danger to others in prison based on this incident.

Finally, I find that this evidence would be extremely prejudicial to the Defendant. It could be argued that the evidence shows that Defendant implicated himself in the murder of Joey Estrella, to wit: "Do you people understand that I came from Florence and I am here for killing a motherfucker?" This would not only be extremely prejudicial, but could mislead the jury or confuse them into thinking that this evidence is somehow being used to show that Defendant confessed to the crime.

I find the case of *United States v. Walker,* 910 F.Supp. 837 (N.D.N.Y.1995) instructive on this issue. In *Walker,* the court threw out the nonstatutory aggravating factor of lack of remorse which was based upon Walker's statement to a fellow inmate that he and his codefendant "killed the motherfucker." The court stated: "In light of the obvious prejudice entailed by singling out and presenting this epithet to the jury as a non-statutory aggravating factor, and in light of the numerous competing inferences which can be drawn from the use of such vulgarisms, and overall, in light of the sheer triviality of this allegation as compared to the portentous purposes for which it is alleged, the Court can conceive of no purposes for which presentation of this information as a discreet nonstatutory aggravating factor could be viewed as more probative that unfairly prejudicial." *Id.* at 855. I agree with the reasoning in *Walker* and find its rationale applicable to this incident.

Accordingly, the incident on February 9, 2001 will not be admissible at the penalty phase on the issue of future dangerousness. Defendant's Motion To Strike Incidents Listed In Support Of The Government's Nonstatutory Aggravating Factor "Future Dangerousness" On The Grounds They Are Insufficiently Relevant And Reliable To Submit To The Jury [Wm DP–16] is thus granted as to this incident.

### f. *Incident Report Nos. 857603 and 857606*

■ The Third Amended NOI asserts that on or about February 12, 2001, at the SHU at FCI–Englewood, Defendant threw hot coffee on prison staff, resisted removal from his cell, and broke his right arm free from soft restraints. When officers came in to secure him with hard restraints, he again physically resisted and attempted to bite the officers. (Third Amended NOI at 8; *see also* Gov't Exs. 10A—Incident Report.)

The amended proffer states that the Government will present the following evidence in support of this incident:

A. Testimony of Officer Specialist Brent Hunt, Jr., Federal Air Marshal Pete Toner, formerly a Specialist with the BOP, and Lieutenant F. Ensile. (*See* Gov't Exs. 10B and 10C.)

B. Videotape taken during the incident. It shows efforts made to persuade William Sablan to cooperate and the actions of the use-of-force team. It also shows Sablan removing his restraints in the holding cell. A copy of this video, which can be authenticated by a custodian of records for BOP, has been provided to defense counsel. (*See* Gov't Ex. 10D.)

I find that evidence about these incident reports should not be stricken. The evidence taken in its totality (if consistent with the Government's exhibits and its amended proffer) is probative as to the issue of future dangerousness in prison. I further find that the probative value of this evidence outweighs any unfair prejudice, confusion of the issues or misleading of the jury.

This evidence is not simply about Defendant violating rules or codes of the BOP or making threats, as Defendant argues. It shows that when given an opportunity, Defendant may attempt to get out of his restraints and harm prison officials. Indeed, the evidence shows that Defendant did actually attempt to assault and/or harm correctional officers by throwing hot coffee on an officer and through attempting to bite officers who were trying to restrain him. The videotape is particularly probative of this issue, as it shows the threat that William Sablan poses to correctional officers when he is agitated and unrestrained and the significant effort required on the part of officers to get him under control and restrain him. *See O'Driscoll,* 250 F.Supp.2d at 442.

Accordingly, I decline to strike incident reports 857603 and 857606, finding them probative of future dangerousness. Defendant's Motion To Strike Incidents Listed In Support Of The Government's Nonstatutory Aggravating Factor "Future Dangerousness" On The Grounds They Are Insufficiently Relevant And Reliable To Submit To The Jury [Wm DP–16] is denied as to this evidence.

### g. *Incident Report No. 869064*

■ The Third Amended NOI asserts that on or about March 24, 2001, at the ADX in Florence, Colorado, Defendant became aggressive with officers while being escorted to a cell during cell rotation. Once he was inside the cell and his hand restraints were removed, he reached through the bars and grabbed an officer by the shirt, pulling him into the bars. As a result of this conduct, Defendant was placed in a cell with plexiglass over the bar

front. (Third Amended NOI at 8–9; *see also* Gov't Ex. 11A—Incident Report.) The amended proffer asserts that the Government intends to introduce the testimony of Senior Officer Specialist Adam Halliday in support of this motion. (*See* Gov't Ex. 11B.)

I find that this incident should not be stricken because this evidence taken in its totality (if consistent with the incident report and the Government's amended proffer) is probative as to the issue of future dangerousness in prison. I further find that the probative value of this evidence outweighs any unfair prejudice, confusion of the issues or misleading of the jury. Defendant argues that this incident only involved failing to obey an order, a violation of the BOP code. Defendant also argues that although he engaged in affirmative action, it did not result in harm to any human being. Thus, he argues that evidence regarding this incident should be stricken. I reject these arguments as a basis to strike the evidence.

The evidence shows more than a violation of an order. If the evidence was merely that Defendant failed to obey the orders to walk to his cell and/or verbally abused the officers, I do not believe this would be sufficiently probative of future dangerousness. However, the evidence from this incident is probative to future dangerousness in prison since it shows that Defendant, if given an opportunity, may attempt to harm prison officials. Indeed, according to the amended proffer, Defendant attempted to harm Officer Halliday by throwing soap at him and, more importantly, grabbing him through the bars. *See Sampson,* 335 F.Supp.2d at 225–26; *O'Driscoll,* 250 F.Supp.2d at 442; *Grande,* 353 F.Supp.2d at 640.

To the extent Defendant asserts that the discovery provided on this incident does not fully support the facts stated by the Government, this is something that can and should be raised on cross examination. Finally, I find that Defendant has not made an adequate showing of prejudice. *See Taylor,* 2006 WL 3359280, at *3.

Accordingly, I find that evidence regarding Incident Report No. 869064 should not be stricken. Defendant's Motion To Strike Incidents Listed In Support Of The Government's Nonstatutory Aggravating Factor "Future Dangerousness" On The Grounds They Are Insufficiently Relevant And Reliable To Submit To The Jury [Wm DP–16] is thus denied as to this evidence.

h. *Incident Report No. 889220*

 The Third Amended NOI asserts that on or about May 29, 2001, while being transported to a community hospital outside the institution, Defendant removed his seat belt and tried to remove his restraints. During this incident, he also threatened to assault staff and had to be returned to the institution with emergency lights and siren. Defendant admitted his actions and stated that he had been upset because he felt he had been disrespected. (*See also* Gov't Ex. 12A—Incident Report.)

The amended proffer states that the Government will present the following evidence in support of this incident:

A. Testimony of witnesses Lt. D.P. Womeldorf (Gov't Ex. 12B), Federal Air Marshal J. Beaudin, formerly a lieutenant with the BOP at Florence, and A. Gillespie, the driver of the van carrying William Sablan.

I find that this conduct should be excluded under 18 U.S.C. §§ 3593(c) because its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. This conduct involves a mere threat of violence where no one was actually hurt. Although William Sablan engaged in affirmative action—taking off his seatbelt—it did not result in harm to any human being. Fur-

ther, while Defendant attempted to get out of his restraints, he never actually did so. Thus, there was not even a real risk that someone could be harmed. Finally, angry words by the Defendant are not sufficiently probative on the issue of future dangerousness. *See Gilbert,* 120 F.Supp.2d at 155; *Davis,* 912 F.Supp. at 945.

Accordingly, I conclude that this incident must be stricken as it lacks sufficient gravity to be relevant to the issue of future dangerousness. Defendant's Motion To Strike Incidents Listed In Support Of The Government's Nonstatutory Aggravating Factor "Future Dangerousness" On The Grounds They Are Insufficiently Relevant And Reliable To Submit To The Jury [Wm DP–16] is thus granted as to this evidence.

i. *Defendant's Mental Health as a Basis to Strike the Institutional Incidents*

██ Defendant argues that many of the institutional incidents are more indicative of William's mental illness and the BOP's refusal to treat him than they are of future dangerousness. (*See* William Sablan's Resp. to the Govt's July 24, 2006 Proffer Regarding Future Dangerousness at 29–30.) He asserts in that regard that many of the incidents occurred after counsel was appointed and while counsel was attempting to get the Bureau of Prisons ["BOP"] to provide Defendant with appropriate medication. Defendant states that the BOP refused to acknowledge the fact that he needed treatment. Defendant also states that his counsel eventually filed a motion seeking the Court's assistance, but the Court denied the motion and deferred to the BOP as Defendant's custodian.

Meanwhile, Defendant states that the Government is arguing that certain institutional incidents can appropriately be used in aggravation because it gives insight into the degree of anger experienced by Defendant. However, when properly medicated, it is argued that Defendant is cooperative and can more easily manage his anger,

paranoia, and psychosis. Finally, Defendant points out that the last institutional-setting incident occurred on May 29, 2001, more than five years ago. Under these circumstances, Defendant argues that it would be fundamentally unfair and a violation of due process to use those past incidents as grounds for a sentence of death.

I reject Defendant's argument as a basis to strike any institutional and/or other incidents. First, I note that Defendant has cited no authority in support of his due process argument. Second, the argument calls for the Court to make assumptions about the medications given to Defendant and whether it has caused Defendant to be more cooperative and less angry. Defendant essentially asks the Court to infer that since the last institutional incident occurred a number of years ago, the medication that Defendant has been prescribed must be the reason why Defendant has not been involved in any more incidents. It is not the Court's role, however, to determine what effect the medication or lack of medication had in connection with either the institutional incidents and/or Defendant's current behavior. This would need to be evaluated by a trained mental health professional and presented to the jury. In short, arguments related to Defendant's mental health must be raised and decided at trial.

3. *Statutory Aggravating Factor*

 The Government seeks to admit the statutory aggravating factor under 18 U.S.C. § 3592(c)(2) of Previous Conviction of Violent Felony Involving Firearm. (Third Amended NOI pp. 3–4.) This aggravating factor relies on Defendant's prior conviction in Criminal Case No. CR99–00018, United States District Court for the Northern Mariana Islands. Relevant to that case, the Government asserts that on or about April 18, 1999, Defendant pleaded

guilty to and was convicted of three felonies: (1) 18 U.S.C. §§ 1203 & 2—Hostage Taking; (2) 18 U.S.C. § 922(g)(1)—Felon in Possession of a Firearm; and (3) 18 U.S.C. § 924(h)—Transfer of a Firearm Knowing It Will Be Used to Commit Crime of Violence, to wit: Assault with a Deadly Weapon.

These charges relate to the prison riot at the Central Male Detention Facility of the Department of Public Safety in Saipan, wherein Defendant allegedly took Chinese inmates and other inmates as hostages and threatened to kill hostages and police officers with a gun. This led to Defendant's pleas of guilty in the U.S. District Court for the Northern Mariana Islands. Defendant was sentenced to 252 months in federal prison for these crimes. The Government seeks to admit this evidence both as a statutory aggravating factor and in connection with the nonstatutory aggravating factor of future dangerousness.

The amended proffer states that the Government will present the following evidence in support of this incident:

A. Certified Copies of Court Documents: Information filed April 13, 1999; Plea Agreement signed April 13, 1999 by William Sablan and his counsel; Judgment dated July 15, 1999. (*See* Gov't Exs. 5A, 5B, and 5C.)

B. Defendant's arrest photo(s) of March 10, 1999. Deputy U.S. Marshal Clark A. Marquez may testify at the penalty hearing regarding his retrieval of the photograph. The Government may seek to offer his testimony through an affidavit at the time of the Phase III Evidentiary Hearing. (See Ex. 5L.)

C. Testimony of Major Ramon Camacho, a trained hostage negotiator, and Officer Chris Guerrero, regarding their personal contact and communications with Defendant during

the riot and hostage taking incident; and testimony of ATF SA Gil Bartosh regarding the contents of statements he took of detainees Zhou Bo, Cui Xing Hao, Saddy Camaso Cuarterono and Luis Deleon Guerrero Camacho. (Gov't Exs. 5D–5I.)

D. Photos and video of damage to the facility. (Gov't Ex. 5J.)

E. As to identification, it is anticipated that in addition to the arrest photograph referenced above, Defendant will be identified by witnesses to the incident and through BOP records containing fingerprints and photos. BOP custodian of records Wendy Heim may testify regarding records maintained by BOP regarding the defendant. The Government may also seek to have the fingerprints associated with this case compared with known prints. (Gov't Ex. 5K, 5L.)

I find that this crime is probative both as a statutory aggravating factor and in connection with the nonstatutory aggravating factor of future dangerousness, although the method of proof is different as to the two aggravating factors. Specifically, I find that the evidence as to the statutory aggravating factor is limited to establishing the fact of conviction. *See United States v. Mayhew,* 380 F.Supp.2d 936, 954 (S.D.Ohio 2005) ("[t]o prove the statutory aggravator beyond a reasonable doubt, the prosecution must merely demonstrate that 'the defendant has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than one year, involving the use or attempted or threatened use of a firearm ....' [t]he evidence submitted will be extremely limited because the very fact of the conviction is all that is required to prove the statutory aggravator"). The Information (Gov't

Ex. 5A) or other documents showing the fact of conviction thus will be the key evidence for the Government to present as to the statutory aggravating factor.

■ On the other hand, future dangerousness is not proved merely by the fact of conviction. Instead "the government must demonstrate that the conviction provides some indication of the Defendant's future conduct." *Id.* The underlying facts of the crime thus become relevant in connection with this proof. As noted in *Mayhew*, "the conviction's similarity and its temporal proximity to the instant alleged crime, *not the fact of the conviction itself,* will be used to prove 'Future Dangerousness.'" *Id.*

More specifically as to future dangerousness, I find that the evidence about what occurred during this riot is highly probative on the issue of Defendant's future dangerousness. Indeed, Defendant has admitted that this crime, along with the charged offense, are the "best evidence of future dangerousness in a prison setting." (*See* William Sablan's Resp. To the Government's July 24, 2006 Proffer Regarding Future Dangerousness at 30.) I agree and find that this crime is probably the most probative evidence regarding future dangerousness in prison, since it shows the significant danger that Defendant has already posed in a prison setting relating to rioting, hostage taking and other very dangerous behavior directed at prison officials and other inmates. This evidence shows that Defendant may pose a significant danger in the future to other inmates and prison officials.

I further find that while much of the evidence is extremely prejudicial based on Defendant's dangerous conduct, it is that very conduct which also makes it extremely probative. Given the high relevance to future conduct in prison, I find that the probative nature of this evidence outweighs the danger of unfair prejudice, confusion of the issues or misleading the jury.

Turning to the specific evidence that I find probative on the issue of future dangerousness, this evidence goes beyond the fact of conviction to include the proposed testimony of Major Camacho and Officer Guerrero and evidence related to the damage caused by the riot. The testimony of Officers Camacho and Guerrero is particularly relevant as it goes to the extremely violent and dangerous behavior on the part of Defendant that they observed, including his attempts to harm them. The photos and video of the facility after the riot are also probative on future dangerousness since they show the level of anger and aggression that Defendant experienced.

■ However, evidence regarding the statements made by the detainees and sought to be admitted through Agent Bartosh are testimonial in nature because they were the product of law enforcement questioning. To introduce Agent Bartosh's testimony would constitute a violation of Defendant's right to confrontation. Accordingly, this evidence is inadmissible at the penalty stage unless the Government can show that the witnesses are unavailable and that Defendant had a prior adequate opportunity to cross examine the witnesses. The Government has not made such showing to date.

Defendant also argues, however, that to the extent these convictions are used both for the statutory aggravating factor and the non-statutory aggravating factor of future dangerousness, there is a risk of duplication. *See United States v. McCullah,* 76 F.3d 1087, 1111 (10th Cir.1996) ("double counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally."). More specifically, Defendant argues that the statutory aggravating factor under 18 U.S.C. § 3592(2), "Previous

Conviction of Violent Felony Involving Firearm", refers to guilty pleas to charges brought in Criminal Case No. CR99–00018. The Information in that case alleged a violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm, specifying as predicates two prior CNMI convictions—a robbery conviction in CNMI Case No. 96–235 and an escape conviction in CNMI Case No. 96–258. Case No. 96–235 is the same robbery conviction listed in the NOI and proffer in support of future dangerousness (and discussed in Section III.B.1.d, *infra.*) Defendant argues that allowing the Government to introduce evidence relating to the robbery conviction both for purposes of the statutory aggravating factor and for purposes of future dangerousness constitutes impermissible double counting.

Since I previously ruled that Case No. 96–235 is probative of future dangerousness and will not be stricken, Defendant requests as a remedy that the Court limit the Government to presenting only the fact of prior convictions for purposes of both the statutory aggravating factor and the nonstatutory factor. (*See* William Sablan's Second Supplemental Resp. to the Government's July 24, 2006 Proffer Regarding Future Dangerousness at 4.) Defendant also requests that the Information filed in Criminal Case No. CR99–00018 be redacted to reflect only the charge of felon in possession of a firearm. *Id.* If the Court declines the above request, Defendant then requests that the robbery conviction in Case No. 96–235 be stricken from an allegation in support of future dangerousness as impermissible double counting. *Id.*

I reject Defendant's requests in connection with the issue of double counting. Instead, I find that any risk of double counting can be cured in connection with the statutory aggravating factor by redacting Count Two of the Information in Case No. 99–00018 to take out the predicate

offenses, including the robbery offense in Case No. 96–235 and the other predicate acts. That way the jury will not know that a predicate act to the statutory aggravating factor is the same robbery that the Government seeks to admit as to future dangerousness. The predicate acts are not relevant to what the Government must prove in connection with the statutory aggravating factor, and are thus not necessary. I further find that redaction of the robbery offense alone (rather than all the predicate acts) could be confusing or misleading to the jury. This redaction shall be made by the Government prior to the commencement of the penalty phase of the trial, if the case proceeds to that stage.

## III. *CONCLUSION*

Based upon the foregoing, it is

ORDERED that Defendant's request to strike new evidence in the amended proffer is denied, as I find that the evidence was tendered sufficiently in advance of the November hearing and I find no prejudice to Defendant as a result of the disclosure of this evidence. However, evidence disclosed by the Government to Defendant after the filing of the amended proffer is untimely and will not be admissible in this case. It is

FURTHER ORDERED that the Confrontation Clause as interpreted by *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) is applicable during the penalty stage, if the case proceeds to that stage, and that the penalty stage will not be bifurcated. Testimonial statements must be excluded if they do not meet the requirements for admission of such evidence. It is

FURTHER ORDERED that the following crimes/incidents are stricken as to the future dangerousness aggravating factor: Criminal Case Numbers 84–68 and 84–69, the institutional incident on February 9,

2001 and Incident Report No. 889220. Defendant's requests to strike the other crimes/convictions/incidents are **DENIED**. It is

FURTHER ORDERED that the Government shall file a Fourth Amended Notice of Intent to Seek the Death Penalty on or before the start of penalty phase of the trial, should the case proceed to that stage, that deletes any reference to the crimes and incidents that I have stricken and makes the redaction ordered in Section III.B.3, *supra*. It is

FURTHER ORDERED that William Sablan's Motion to Strike Incidents Listed in Support of the Government's Nonstatutory Aggravating Factor "Future Dangerousness" on the Grounds They Are Insufficiently Relevant and Reliable [Wm DP16] is **GRANTED IN PART AND DENIED IN PART** consistent with this Order. It is

FURTHER ORDERED that to the extent other Phase III motions were previously denied without prejudice as to the admissibility of specific convictions and/or incidents sought to be used by the Government at the penalty phase, the rulings in this Order are intended to encompass the arguments raised in all such motions.