**UNITED STATES of America,**

v.

**Richard Thomas STITT, Defendant.**

**Criminal Action No. 2:98cr47.**

United States District Court,
E.D. Virginia,
Norfolk Division.

May 28, 2010.

Fernando Groene, U.S. Attorney's Office, Richmond, VA, for U.S.

### *MEMORANDUM OPINION AND ORDER*

RAYMOND A. JACKSON, District Judge.

Before the Court are the Government's Motion to Reconsider the Court's Order Striking the Second Amended Death Notice and Applying Confrontation Clause Throughout the Penalty Phase, and Richard Thomas Stitt's ("Defendant") Motion to Strike Aggravating Factors (of the Original Notice of Intent to Seek the Death Penalty). The Court held a hearing on these matters on May 14, 2010. After conducting a hearing and thoroughly reviewing the parties' memoranda, the Court **DENIED IN PART** and **GRANTED IN PART** the Government's Motion to Reconsider. Furthermore, the Court **DENIED IN PART** and **GRANTED IN PART** the Defendant's Motion to Strike. This Memorandum Opinion and Order further expi-

ates the Court's bench rulings made at the May 14, 2010 hearing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 2, 2010, Defendant filed a Motion to Strike the Aggravating Factors in the Government's First Amended Notice of Intent to Seek the Death Penalty and Memorandum in Support. On March 8, 2010, the Government filed a Motion for Reconsideration of the Court's Memorandum Order Striking the Government's Second Amended Notice of Intent to Seek the Death Penalty. On March 17, 2010, Defendant responded to the Government's Motion. The Government filed a response to Defendant's Motion on March 29, 2010. The Court held a hearing on this matter on May 14, 2010.

## II. DISCUSSION

### A. Government's Motion to Reconsider

The Government requests the Court to reconsider its Memorandum Opinion and Order issued on February 22, 2010 in which it denied the Government's Second Amended Notice of Intent to Seek the Death Penalty and issued other rulings related to Defendant's resentencing. The Government asserts that this Court's opinion rests on legal error, and would result in the exclusion of evidence otherwise admissible during the penalty phase.

Specifically, the Government argues that: (1) The Court erroneously used its "equitable powers" under 28 U.S.C. § 2255 in barring introduction of new evidence; (2) The Court erred in dismissing the Second Amended Notice which included the introduction of victim impact evidence; and (3) The Court erred in its decision to apply the Confrontation Clause to the entirety of the penalty phase. The Defen-

dant contends that the Government's arguments are wholly without merit.

■ The Federal Rules of Criminal Procedure do not have a provision addressing a motion to reconsider on a criminal matter such as this one. *See Nilson Van & Storage Co. v. Marsh,* 755 F.2d 362, 364 (4th Cir.1985) (noting that the Federal Rules of Criminal Procedure "do not specifically provide for motions for reconsideration and prescribe the time in which they must be filed"). However, district courts generally have inherent authority to decide motions for reconsideration and rehearings of orders in criminal proceedings. *See United States v. Aguirre,* 214 F.3d 1122, 1124 (9th Cir.2000) (noting, in part, that district courts' inherent authority to reconsider is only expressly limited in correcting or modifying a final sentence).

### 1. The Court's "Equitable Powers" under § 2255

■ The Government first argues that the Court assumes that Defendant's resentencing is part of Defendant's proceeding under 28 U.S.C. § 2255, in which a district court exercises equitable powers to determine when a piece of evidence or procedural rule may properly be employed. However, because Defendant's § 2255 proceeding has ended, the Government argues that the Court is without power to bar the Government from introducing all new evidence that is disadvantageous to Defendant. In essence, the Government is making virtually the same argument as it presented to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") in *United States v. Stitt,* 552 F.3d 345 (4th Cir.2008), when it argued that this Court lacked broad "equitable powers" under § 2255 to hold a new sentencing hearing without the possibility of the death penalty, and without impaneling a new jury.

The Court finds that the Government erroneously views this Court's power to "reshape" Defendant's resentencing as equitable under § 2255. Because of the relief this Court granted Defendant pursuant to his § 2255 petition, Defendant has been placed in the "same position he would have been had there been no error in the first instance." *United States v. Silvers*, 90 F.3d 95, 99 (4th Cir.1996). This position is facing resentencing under 21 U.S.C. § 848(g), *et seq.* The evidentiary issues encompassed in the Court's power to deny or strike the Notice of Intent to Seek the Death penalty are the those specifically regarding his resentencing, not his § 2255 petition. Thus, the Court is not relying on its § 2255 "equitable" powers in making a determination that would limit some of the Government's proposed evidence. Accordingly, the Government's Motion to Reconsider based on the assertion of the Court's improper use of its "equitable powers" is **DENIED.**

### 2. De Novo Sentencing and Introduction of New Evidence

The Government next argues that because the Fourth Circuit did not issue a mandate limiting the scope of the resentencing, both parties should be entitled to introduce all new evidence in this "de novo" sentencing.

▇▇▇ The Court distinguishes the introduction of "new" evidence in support of a properly stated aggravating factor in the Notice of Intent to Seek the Death Penalty, from the introduction of an entirely new set of aggravators that the Government seeks to put forth after the Defendant has already been sentenced. A Defendant is entitled to receive adequate notice of the aggravating factors, but *not* notice of the specific evidence that will be used to support it. *United States v. Higgs*, 353 F.3d 281, 324 (4th Cir.2003);

see also *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir.1999) (observing that notice given to a defendant of the applicable aggravating factors in a death penalty case is not the name as notice of the specific evidence that the government intends to present at a sentencing hearing). Thus, the Government is "not required to spell out the evidence it intends to use during sentencing." *United States v. Cisneros*, 363 F.Supp.2d 827, 837 (E.D.Va. 2005). However, for a piece of evidence to be introduced and stated as a non-statutory aggravating factor in a notice of intent to seek the death penalty, it must meet a certain level of "heightened" reliability and relevance. *See United States v. Friend*, 92 F.Supp.2d 534, 543–44 (E.D.Va.2000).

▇▇▇ Thus, although the Fourth Circuit did not place limits on what sort of new evidence could be introduced at the resentencing, this does not automatically entitle the Government to the introduction of additional new aggravators in support of a death sentence if the aggravators do not meet the necessary heightened degree of reliability and relevance. Moreover, in exercising discretion as to whether the Government is permitted to amend, the Court must additionally look to whether such amendments would prejudice Defendant. *See United States v. Pitera*, 795 F.Supp. 571, 573 (E.D.N.Y.1992) (noting that good cause is demonstrated where "the government's application was made in good faith and the defendant was not prejudiced"); *United States v. Frank*, 11 F.Supp.2d 314, 318 (S.D.N.Y.1998) (noting that the Federal Death Penalty Act envisions that judges will continue to play a "gatekeeping" role at the penalty phase of a capital trial, and that considerations of unfair prejudice to defendant at sentencing must be taken into account). The uniquely high prejudice to Defendant in this case is presented

in large part by the fact that the Government attempts to seek the death penalty based on new aggravating factors some twelve years after Defendant's initial sentence. Accordingly, the Court finds that the risks of undue prejudice to Defendant are too great in this case to permit the admission of new nonstatutory aggravating factors and denies the Government's Motion to Reconsider.

■ However, the Court does find that new evidence in support of a *properly drafted* aggravating factor in the Notice of Intent to Seek the Death penalty is appropriate and acceptable. The concepts of constitutional relevance, reliability and vagueness do not apply to the evidence supporting the non-statutory aggravators. *Cisneros*, 363 F.Supp.2d at 838 (noting that in determining whether to admit evidence in support of a non-statutory aggravating factor, a court must consider whether it is "relevant to the non-statutory aggravator, whether it is reliable, and whether it is less prejudicial than probative"). In other words, the Court's holding does not bar the introduction of all new evidence as the Government opines. The Court simply denied the introduction of the additional aggravators as the Government presented in the Second Amended Notice of Intent to Seek the Death Penalty. Accordingly, this portion of the Government's Motion to Reconsider is **DENIED.**

### 3. Victim Impact Evidence

The Government argues that the court erred in denying the admission of victim impact as a non-statutory aggravating factor. The Government takes the position that striking this factor contradicts the United States Supreme Court's ("Supreme Court") rulings in *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) and *Jones v. United States*, 527

U.S. 373, 395–96, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999), that the sentencing jury should learn of the impact of Defendant's crimes, as well as the Justice for All Act. The Justice for All Act, 18 U.S.C. § 3771(a)(4) offers victims "[t]he right to be reasonably heard at any public proceeding in the district court involving ... sentencing." Finally, the Government points to the fact that the Court permitted introduction of most of the victim impact evidence at the first sentencing (although erroneously as rebuttal), so therefore Defendant cannot assert lack of notice or prejudice stemming from its admission in this Amended Notice and resentencing.

■ Victim impact testimony "serves the legitimate purpose of informing the jury of the specific harm caused by the crime, thereby promoting an accurate assessment of defendant's moral culpability and blameworthiness." *United States v. Ealy*, No. 1:00cr104, 2002 WL 376880, at *3, 2002 U.S. Dist. LEXIS 3971, at *10 (W.D.Va.2002) (citing *Payne*, 501 U.S. at 825, 111 S.Ct. 2597 ("Victim impact evidence serves entirely legitimate purposes.")). Under 21 U.S.C. § 848, although not specifically mentioned in the statute, victim impact evidence is admissible if a defendant is afforded notice. The Fourth Circuit held that this Court erred by permitting the Government to introduce victim impact as rebuttal evidence when it had *not* given notice to Defendant of its intent to introduce this evidence. *United States v. Stitt*, 250 F.3d 878, 895–98 (4th Cir.2001). Accordingly, regarding the victim impact evidence that was introduced during the first penalty phase, the Court amends its prior ruling and therefore permits this evidence to be listed as a non-statutory aggravating factor because Defendant clearly has notice, the evidence is reliable and relevant, and Defendant cannot demonstrate prejudice. This victim

impact evidence includes the testimony of the mother of James Griffin and the mother of Sinclair Simon. The testimony of a family member of James Gilliam was not presented in the first penalty hearing, yet the Government seeks its admission as well. The Court finds that this limited admission will not be unduly prejudicial to Defendant.

Accordingly, the Court allows a limited amendment to the Notice of Intent to Seek the Death Penalty to add victim impact as a non-statutory aggravating factor, thereby curing the procedural error cited by the Fourth Circuit in *Stitt*, 250 F.3d at 895–98. The portion of the Government's Motion to Reconsider seeking to add victim impact evidence is **GRANTED.**

### 4. Confrontation Clause

The Government next asserts that the Court erred in ruling that it would apply the full protections of the Confrontation Clause throughout the eligibility and selection portions of the penalty phase. Alternatively, the Government argues that the Court should conduct a "bifurcated hearing."

▉▉▉ Title 21 U.S.C. § 848 does not "necessarily mandate a single unitary proceeding," that encompasses both eligibility and selection for the death penalty. *United States v. Jordan*, 357 F.Supp.2d 889, 903 (E.D.Va.2005). However, although the "bifurcated" sentencing hearing was deemed appropriate in *Jordan*, the Court also conceded that "it may not be wise in all cases," and that it was "a matter on which the Court should exercise its discretion based on the circumstances at hand." *Id.* As this Court previously stated, the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted by the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct.

1354, 158 L.Ed.2d 177 (2004). The applicability of the Confrontation Clause in capital sentencing proceedings has not been "clearly established" by Supreme Court precedents, or lower courts, including the Fourth Circuit. *See Maynard v. Dixon*, 943 F.2d 407, 414 n. 5 (4th Cir.1991) (noting that the question of whether the Confrontation Clause applies in sentencing proceedings is undecided); *United States v. Higgs*, 353 F.3d 281, 324 (4th Cir.2003) (noting that "[i]t is far from clear that the Confrontation Clause applies to a [federal] capital sentencing proceeding"). In *United States v. Jordan*, 357 F.Supp.2d 889, 903 (E.D.Va.2005), the Court held that the Confrontation Clause does not apply to the "selection" phase of a capital case. A split panel of the Fifth Circuit similarly held in *United States v. Fields*, 483 F.3d 313 (5th Cir.2007) that the Confrontation Clause does not apply to the entire sentencing phase of a capital case. Therefore, hearsay introduced in support of nonstatutory aggravating factors during the sentence phase was not excluded by the Confrontation Clause in that case.

Again, as pointed out by Defendant, district courts post *Crawford* have reached the opposite conclusion. *See United States v. Sablan*, 555 F.Supp.2d 1205, 1219–22 (D.Colo.2007) (holding that "the existence of all the aggravating factors are constitutionally significant facts that should be found by the jury," and that "bifurcation of the penalty stage is not the proper remedy in this case"); *United States v. Mills*, 446 F.Supp.2d 1115, 1130–31 (C.D.Cal.2006) (holding that "confrontation rights must apply to the entirety of the penalty phase of capital trials, including the selection phase").

▉▉▉ The Court finds no meritorious reason to grant this portion of the Government's Motion to Reconsider because there is no clear Fourth Circuit or Supreme

Court precedent holding that a Court shall not employ the Confrontation Clause in both the eligibility and selection stages of a capital sentencing, and even more specifically a capital resentencing some twelve years after the initial sentencing as is the case in this instance. Furthermore, bifurcation in the way suggested by the Government is not referred to in the ADAA nor the FDPA. Accordingly, the Government's Motion to Reconsider on this basis is **DENIED**.

## B. Defendant's Motion to Strike

In its Motion to Strike the First Amended Notice of Intent to Seek the Death Penalty, Defendant challenges various mental state aggravating factors and numerous non-statutory aggravating factors that the Government seeks to present to the jury at the resentencing. The Court first addresses the inclusion of multiple mental state threshold aggravators. The following non-statutory aggravators that the Court addresses in this Order are those that the Court has ruled appropriate to be stricken from the First Amended Notice of Intent to Seek the Death Penalty. Most of these factors were addressed in some form during the oral hearing, whereas several factors have been stricken after the Court's further consideration.

### 1. Mental State Threshold Aggravating Factors

■ Defendant argues that the Government has identified three mental state threshold aggravating factors as to capital Counts Three, Five and Seven in the Notice: (1) The defendant intentionally killed [the victim] pursuant to § 848(n)(1)(A); (2) The defendant intentionally inflicted serious bodily injury, which resulted in the death of [the victim] pursuant to § 848(n)(1)(B); and (3) The defendant intentionally engaged in conduct intending

that [the victim] be killed and that lethal force be employed against the victim, which resulted in the death of [the victim] pursuant to § 848(n)(1)(C). According to Defendant, the Court should strike two of the mental states such that only one is submitted to the jury because they are inconsistent with the government's evidence. In Defendant's view, it is implausible that he possessed all three distinct mental states simultaneously.

■ In *United States v. Tipton*, 90 F.3d 861, 899 (4th Cir.1996) the Fourth Circuit held (in a 21 U.S.C. § 848 case) that the submission of four different intent factors to the jury for consideration as aggravating factors "runs a clear risk of skewing the weighing process in favor of the death penalty and thereby causing it to be imposed arbitrarily, hence unconstitutionally." This is because in a Section 848 case, the jury is to consider the type of intent as an aggravating factor *itself*, rather than a threshold matter, as was the case in *United States v. Jackson*, 327 F.3d 273 (4th Cir.2003), a § 924(j) case.

Although Defendant contends that the jury found all three mental state aggravators in each count, this is incorrect. On Counts Five and Seven, the Government alleged only one mental state factor and only one such factor was submitted to and considered by the jury: 848(n)(1)(C). Therefore, the Court only focuses on Count Three in determining whether to strike two of the mental state factors. The Government requests that the Court provide limiting instructions in its penalty phase and in the special verdict form in order to prevent the jury from weighing more than one factor in Count Three. However, § 848(n)(1)(A) as a mental state aggravator is simply inconsistent with the Government's evidence. Regarding the murders, the Government's theory is that Defendant ordered the killing, not that he

was the actual triggerman. Moreover, although the Court did provide a limiting instruction, there is still the potential that the inclusion of more than one mental state factor could skew the weighing process. *See Tipton,* 90 F.3d at 899.

Accordingly, regarding Count Three, the Court strikes the mental state aggravators referring to § 848(n)(1)(A) and 848(n)(1)(B). Only § 848(n)(1)(C) shall be submitted to the jury for consideration.

### 2. Non–Statutory Aggravating Factors

#### a. Legal Framework

■ The Court next turns to Defendant's Motion to Strike certain non-statutory aggravating factors from the First Amended Notice of Intent to Seek the Death Penalty. The Court's screening of these aggravating factors is important to "ensur[e] that sentencing is carried out in a manner consistent with the requirements of the Constitution." *Cisneros,* 363 F.Supp.2d at 833. This process is necessary to permit the jury to make a "principled distinction between those who deserve the death penalty and those who do not." *Lewis v. Jeffers,* 497 U.S. 764, 776, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).

■ As such, aggravating factors must meet critical standards of heightened reliability and relevance to be permitted. Specifically, to come before a jury, an aggravating factor must "have a substantial degree of gravity to be the sort of factor which is appropriate for consideration in deciding who should live and who should die." *Friend,* 92 F.Supp.2d at 544.[1] Relevance, in this context, means that the factor is "particularly relevant to the sentencing decision, not merely relevant in some

generalized sense, to whether the defendant might be considered a bad person." *United States v. Gilbert,* 120 F.Supp.2d 147, 150 (D.Mass.2000) (quoting *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). Reliability "represents the quality of conduct or the kind of personal characteristics of the defendant which, over time and through judicial testing, have found widespread acceptance in society as matters genuinely probative ... [of who] should be selected for a sentence of death." *Friend,* 92 F.Supp.2d at 544. Thus, in light of the finality of the penalty, the aggravators must satisfy a heightened degree of reliability. *See Cisneros,* 363 F.Supp.2d at 835.

■ Moreover, vague, overbroad and duplicative aggravating circumstances are impermissible. An aggravator is vague if it lacks "some 'commonsense core of meaning ... that criminal juries should be capable of understanding.'" *Tuilaepa v. California,* 512 U.S. 967, 975, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994) (citing *Jurek v. Texas,* 428 U.S. 262, 279, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976)). Duplicative factors must likewise be stricken. When one aggravating factor "necessarily subsumes" another, "such double counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus unconstitutionally." *United States v. McCullah,* 76 F.3d 1087 (10th Cir.1996). The Fourth Circuit has held that "a submission [of multiple overlapping aggravating factors] ... that permits and results in cumulative findings of more than one of the circumstances as an aggravating factor is constitutional error." *Tipton,* 90

---

1. The Defendant points out, and the Court agrees that although decided under the Federal Death Penalty Act ("FDPA") the relevance

and reliability analysis in *Friend* is equally applicable to § 848 cases such as this one.

F.3d at 899 (citing *McCullah,* 76 F.3d at 1111).

With these rules as reference, the Court must at the same time ensure that the jury has "as much information before it as possible" when deciding the Defendant's penalty. *Davis,* 912 F.Supp. at 941.

### b. Non–Statutory Aggravating Factors That the Court Does Not Strike From the First Amended Notice of Intent to Seek the Death Penalty

#### i. Collateral Estoppel/Double Jeopardy

The Court denies Defendant's request to strike all of the aggravating factors that he argues are affected by collateral estoppel or double jeopardy. Defendant asserts that "[t]he Government is collaterally estopped from pursuing a second time those nonstatutory aggravating factors to which the jury, at the first trial, answered 'No' " because of the Double Jeopardy Clause of the Fifth Amendment and collateral estoppel. The Government opines in response that Supreme Court precedent dictates that it can relitigate any findings that were not essential to the prior jury's ultimate holding; because the prior jury found Defendant eligible for the death penalty and then returned an ultimate verdict of a death sentence, any aggravators that the jury rejected in the course of reaching that verdict would not be affected by collateral estoppel in this resentencing.

 The concept of collateral estoppel in the criminal context is recognized as an aspect of the Fifth Amendment's guarantee against double jeopardy. *United States v. Hall,* 551 F.3d 257, 269 (4th Cir.2009). It means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In the death penalty arena, prior acquitted conduct cannot be used as an aggravating factor in a capital case. *Delap v. Dugger,* 890 F.2d 285, 317 (11th Cir.1989).

 However, the Court recognizes that the failure to find any particular aggravating circumstance does not "acquit" a defendant. Although the government must prove the presence of an aggravating factor to the jury's unanimous satisfaction, aggravating circumstances are not separate penalties or offenses, "but are standards to guide the making of [the] choice between the alternative verdicts of death and life imprisonment." *Poland v. Arizona,* 476 U.S. 147, 156, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986) (quoting *Bullington v. Missouri,* 451 U.S. 430, 438, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981)); *see also Romano v. Gibson,* 239 F.3d 1156, 1178 (10th Cir.2001) (noting that under Oklahoma law, the capital sentencer's "finding of any particular aggravating circumstance does not itself 'convict' a defendant ... and the failure to find any particular aggravating circumstance does not 'acquit' a defendant") (internal quotations removed). Furthermore, "if a judgment does not depend on a given determination, relitigation of that determination is not precluded." *Bobby v. Bies,* —— U.S. ——, 129 S.Ct. 2145, 2152, 173 L.Ed.2d 1173 (2009). Finally, this Court received a mandate from the Fourth Circuit that essentially erased the entire initial sentence, and authorized this Court to conduct a new sentencing hearing. In other words, Defendant's first sentencing was not a "valid and final" judgment because of the prior error. *See Romano v. Gibson,* 239 F.3d 1156, 1179 (10th Cir.2001). Following this line of reasoning, the Court finds that the aggravating factors that were answered "No" by the original jury are not precluded by collateral estoppel in this resentencing and therefore will not be stricken.

### ii. Unadjudicated Conduct

The Court also denies Defendant's Motion to strike those aggravators relating to conduct for which Defendant was not charged. There is no *per se* constitutional exclusion to evidence of unadjudicated crimes in the penalty phase; in fact, there is authority in the Fourth Circuit and Supreme Court that evidence of unadjudicated crimes may be utilized in a capital sentencing trial without running afoul of the Eighth Amendment or due process. *See, e.g. Zant v. Stephens,* 462 U.S. 862, 878–79, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *Cummings v. Polk,* 475 F.3d 230, 238 (4th Cir.2007); *Higgs,* 353 F.3d at 323 (admitting unadjudicated crimes as aggravators under 18 U.S.C. § 3592(c)). Inclusion of acts of unadjudicated conduct as non-statutory aggravators allows for "individualized consideration of the circumstances of the crime and the characteristics of the defendant." *See Zant,* 462 U.S. at 878–79, 103 S.Ct. 2733. However, acts of unadjudicated criminal conduct as stand-alone aggravators must still be closely examined for reliability and relevance in order to avoid constitutional deficiencies. *United States v. Johnson,* 136 F.Supp.2d 553, 558–62 (W.D.Va.2001). Accordingly, finding no *per se* exclusion to bar its admission, the Court will not strike all of the aggravating factors referring to unadjudicated conduct.

### c. Analysis of Non–Statutory Aggravating Factors That the Court Strikes From the First Amended Notice of Intent to Seek the Death Penalty

#### i. Factors 1, 2, 3, 4, 5, and 6: Juvenile Conduct

Defendant's Motion to Strike these non-aggravating factors that articulate Defendant's juvenile conduct is granted. Specifically, the government seeks to introduce the following juvenile conduct:

(1) July 1986, Defendant was adjudicated delinquent for receiving stolen property and placed on 12 months suspended commitment in a group home.

(2) October 1986, Defendant was accepted in group home, but was terminated in November 1986 for a petit larceny arrest.

(3) December 1986, Defendant was committed to the Virginia State Board of Corrections following juvenile delinquency adjudications for petit larceny and unauthorized use of a motor vehicle.

(4) November 1987, when on supervised probation Defendant committed several robberies while armed with a deadly weapon.

(5) December 1987, Defendant was committed to the Virginia State Board of Corrections following a juvenile delinquency adjudication for robbery by force.

(6) August, 1988, While on supervised probation Defendant was arrested for unauthorized use of a motor vehicle. The case was transferred to the Circuit Court and Defendant was ordered to be tried as an adult. Defendant was found guilty of the felony offense of unauthorized use of a motor vehicle.

Defendant argues that the Supreme Court's decision in *Roper v. Simmons,* 543 U.S. 551, 578, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) excludes the use of his conduct as a juvenile to support a death sentence for murders that Defendant ordered while he was an adult. In *Roper,* the Supreme Court held that a defendant may not be executed for a capital crime he committed as a juvenile. *Id.* However, this Court finds Defendant's argument that his juvenile adjudications or conduct are *per se* excluded without merit. The Supreme Court has also stated that "it is desirable for the jury to have as much

information before it as possible when it makes the sentencing decision." *Gregg*, 428 U.S. at 204, 96 S.Ct. 2909; *Jurek*, 428 U.S. at 276, 96 S.Ct. 2950. As such, relevant and reliable aggravating factors that consist of conduct Defendant committed as a juvenile are factors that can and should be weighed by the jury.

■ Although the Court finds no impediment to the inclusion of juvenile conduct and convictions *per se*, it nevertheless strikes the first (3) three factors because they fail the heightened reliability/relevance test. The offenses in the first (5) five factors occurred more than ten years before any of the original charges for which Defendant now faces resentencing. Besides the remoteness in time, Defendant did not use any violence with at least the first three factors and they are highly irrelevant to the charges at hand. The probative value of these three factors is outweighed by the danger of unfair prejudice.

■ The Court finds that the Government must combine the fourth and fifth factors because they are duplicative. Although these factors are somewhat remote, they do show an escalation in the level of Defendant's criminal behavior, and Defendant's history with hostile encounters and weapons is relevant to the issue before the jury. The Court strikes the sixth factor because of remoteness and irrelevancy.

### ii. Factor 9: Obstruction of Justice and Other Charges

■ Factor 9 describes an incident in 1993 in which Defendant was found guilty of "the felony offense of possessing a fraudulent driver's license, resisting arrest, obstruction of justice and another misdemeanor." The Court strikes this factor because it is unconstitutionally irrelevant and vague. The fact that Defendant was found guilty of this offense is irrelevant to

the jury's determination of whether Defendant should live or die. *See Jeffers*, 497 U.S. at 776, 110 S.Ct. 3092 (stating that information before the sentencer must go to whether the defendant merits the penalty of death). Moreover, because the jury might give this relatively minor conviction undue weight to justify the death penalty, (particularly with the obstruction of justice charge), allowing its admission may mislead or confuse the jury. Accordingly, factor 9 is stricken.

### iii. Factors 12, 15, 16, 17, 18, 20, 23, 24, 25, 32, 34, 35 and 49: Acts or Threats of Violence or Intimidation

■ These factors involve acts of violence and/or intimidation committed by Defendant or by others at his direction. Factor 12 alleges that in 1996 Defendant was found guilty of trespassing in an incident where he threatened to "smoke" several Portsmouth Deputy Sheriffs. The Court strikes this factor as irrelevant and highly prejudicial. As Defendant points out, the factor does not allege that Defendant was found guilty or even charged with threatening or taking any physical actions against the police, and therefore only relies on the trespassing charge. Thus, beyond the fact that trespassing is irrelevant to Defendant's potential death sentence and his individualized conduct, it has the high potential of confusing or misleading the jury. *See Jeffers*, 497 U.S. at 776, 110 S.Ct. 3092. Therefore, the Court strikes Factor 12.

■ Factors 15, 16, and 17 all revolve around the same conduct: encouraging, requiring, recruiting or otherwise hiring "enforcers" to engage in acts of violence and intimidation to further Defendant's drug organization. The Court finds that these nonstatutory aggravating factors are impermissibly duplicative and therefore

the Government is ordered to combine these into a single factor. They substantially overlap with one another and would result in a skewed weighing process if all are considered separately by the jury.

██ Factor 18 states that Defendant utilized the name "Death" an encouraged others to call him that. This factor is substantially irrelevant, prejudicial and was not submitted to the jury in the first trial. As such, the Court strikes Factor 18.

██ Factor 20 describes an unadjudicated incident in 1991 when Defendant "shot an individual with a firearm." Vague and over broad aggravating circumstances are impermissible. *See Jurek*, 428 U.S. at 279, 96 S.Ct. 2950. Although the vagueness review is "quite deferential" according to *Jurek*, Factor 20 is impermissibly vague and does not pass constitutional muster. As written, the proposed factor lacks a "commonsense" core of meaning. It is unclear who Defendant shot and the factor provides no evidentiary basis for Defendant to challenge its accuracy. It is a bare allegation, unspecified in time or event. However, after questioning by the Court at the hearing, the Government agreed to amend this factor to provide more clarity. Accordingly, the Court finds that acts of violence such as the one stated in Factor 20 are relevant to the issue before the jury; therefore the Court orders the Government to amend Factor 20 to provide greater details of this incident.

██ Factor 23 alleges that Defendant displayed a lack of remorse for the killing of James Griffin by joking that he "did" that murder. The Court finds that there is no *per se* constitutional problem with a lack of remorse factor. *See, e.g., Davis*, 912 F.Supp. at 946 (not allowing "lack of remorse" to be alleged as a separate aggravating factor, but stating that it

would allow the government to present evidence of defendant's alleged exultation to prove "future dangerousness"). Nevertheless, it is stricken because the comment that Defendant "joked" is highly subjective and should not be singled out based solely on this comment. Therefore, it is not appropriate to stand alone as an aggravating factor and is stricken.

██ Likewise, Factor 24 is overly vague as written. This factor states that Defendant, "suspecting that a co-conspirator had stolen drug proceeds belonging to him, sent a codefendant to kill the co-conspirator in retribution." The Government has not named any individuals (besides Defendant) in this factor, nor any other identifying details that provide Defendant sufficient notice in order to defend against it. *See Cisneros*, 363 F.Supp.2d at 827. The Government agreed to also amend this factor at the oral argument hearing.

██ Factor 25 states that in 1994, Defendant invaded the apartment of a female friend and in the presence of the woman's daughter, threatened to physically harm her. The Court agrees with Defendant that this factor is irrelevant in the context of a prosecution for Defendant's drug related murders. This factor has the potential of confusing or misleading the jury because it bears no resemblance to any of the statutory aggravating factors. *See Taveras*, 424 F.Supp.2d 446, 463–64 (holding that evidence of sexual abuse of a minor would likely "inflame the passions of the jurors" and failed the "heightened reliability required of a capital sentence" when the charge was one of murder in furtherance of drug trafficking). This factor does not hold constitutional muster as a stand-alone factor and is stricken.

██ Factor 49 is also in reference to Defendant's alleged intimidation of a fe-

male. It states that in 1997 Defendant dispatched an enforcer to the house of a female friend to intimidate her and to caution her against seeing other men. This domestic incident again lacks relevance to the underlying offenses in this case, and is stricken.

Factor 32 involves an incident in which Defendant "brandished a firearm at an individual while gambling at a local barber shop." Defendant argues that exclusion of this factors is inappropriate because Defendant was never charged with this offense, and moreover that it is unrelated to any of the offenses with which he was charged. Despite Defendant's history with guns, violent criminal conduct and hostile encounters, this factor describing an incident over a dice game at a barber shop is entirely irrelevant and unrelated to the inquiry before the jury. The Court strikes Factor 32.

Similarly, Factor 35 states that in 1995 Defendant "brandished his handgun and attempted to pistol-whip an individual while gambling at the Majik City nightclub." Again, this factor is plainly unrelated to any of the charges against Defendant in this case, and therefore fails the heightened reliability and relevance particularized to this individual's drug trade organization. Accordingly, the Court also strikes Factor 35.

### iv. Factors 52, 53 and 54: Future Dangerousness

These factors allege that Defendant poses a "future danger" in both an institutional setting and in a non-institutional setting. The factors were combined into one non-statutory aggravating factor (Factor number 46) when submitted to the first jury on the special jury verdict form. The factors include claims of future dangerousness because of narcotic trafficking, acts of violence, and threats to prison personnel. The Government also contends that it possesses evidence that in 2004 Defendant threatened a witness on the telephone stating that he was going to arrange for someone to "pay" her "a visit," meaning that he was intending to have her harmed or killed by an enforcer. Additionally, it possesses evidence that since his incarceration, Defendant has allegedly continued to exhibit a lack of remorse for his crimes and publicly profess his innocence.

The Court finds that although the factor of future dangerous has a fairly weak basis in fact considering, in part, that Defendant is already serving a sentence of life without parole, it is nevertheless a properly drafted aggravating factor that the Government should be allowed to support with new evidence that meets the Court's evidentiary rules as to the specific evidence it proffers. However, the Court notes that the Government has tacitly conceded that such a factor could not be proven, in part by the non-inclusion of the factor in the submitted but now stricken Second Amended Notice of Intent to Seek the Death Penalty. Nevertheless, such factors can and should be combined into one factor of future dangerousness to be submitted to the jury.

Accordingly, it is the finding of the Court that Factors: 1, 2, 3, 6, 9, 12, 18, 23, 25, 32, 35 and 49 are hereby **STRICKEN** from the First Amended Notice of Intent to Seek the Death Penalty. Furthermore, the following factors are duplicative and are hereby **COMBINED:** Factors 4 and 5; Factors 15, 16 and 17; Factors 52, 53 and 54. Finally, the Government is hereby ordered to **AMEND** the following factors: Factor 20 and Factor 24.

### III. CONCLUSION

Having thoroughly reviewed the parties' memoranda, and considering the argu-

ments the parties made at the hearing, the Government's Motion to Reconsider is **DENIED IN PART** and **GRANTED IN PART,** considering the Court clarification of its evidentiary holdings and its limited amendment to the First Amended Notice of Intent to Seek the Death Penalty for the inclusion of Victim Impact evidence. Furthermore, the Defendant's Motion to Strike is **DENIED IN PART** and **GRANTED IN PART,** as outlined above.

The Clerk is **DIRECTED** to send a copy of this Order to all parties.

**IT IS SO ORDERED.**