GREGORY, Circuit Judge,
dissenting from the denial of rehearing en banc:
The government used unconfronted accusations from police informants to send a man to his death. I strongly believe that this violated Mr. Umaña’s Sixth Amendment rights. My full reasoning is set out in my dissent. United States v. Umaña, 750 F.3d 320, 360-70 (4th Cir.2014). With all due respect, I consider our refusal to rehear this case en banc to be a grave mistake. However, I write today to explain why I believe that Supreme Court review of Mr. Umaña’s argument is warranted.
I believe Supreme Court review is vital because this Court and the district court misread the past five decades of Supreme Court jurisprudence on the Sixth Amendment and the death penalty. Further, I believe this misreading is the difference between Mr. Umaña living and dying. The conviction supporting the death sentence was a gang-related double murder that occurred after an argument in a bar. Though this crime was appalling, it is unlikely that it alone would have supported a death sentence, given Mr. Umaña’s lack of previous convictions. Rather, the reason Mr. Umaña now faces execution is that the prosecutor was able to introduce out-of-court accusations from police informants *417 that accused Umaña of several previous murders. An examination of the government’s summation argument at sentencing demonstrates this: nearly every page of the transcript references these past murders. Umaña, 750 F.3d at 362 (collecting references to past murders) (Gregory, J., dissenting). For the reasons set out in my dissent, these accusers were not tenable witnesses: they would likely not have withstood the scrutiny of cross-examination. Mr. Umaña was never given this chance, however. Instead, the court substituted a reliability finding for Umaña’s Sixth Amendment rights, and the result was that the jury sentenced Umaña to death.
As Justice Scalia writes, “[dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty.” See Crawford v. Washington, 541 U.S. 36, 62, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). “This is not what the Sixth Amendment prescribes.” Id. Further buttressing my view is that this constitutional violation occurred during a Federal Death Penalty Act trial, in which a jury is required to make factual findings before a death sentence is within the permissible range of punishments. 18 U.S.C. § 3593(e) (requiring a jury to find the existence of enumerated aggravating factors, any additional aggravating factors, and that all aggravating factors outweigh all mitigating factors before death is permissible). Even in sentencing proceedings, certain Sixth Amendment rights apply for factfinding that can increase the range of punishments. Ring v. Arizona, 536 U.S. 584, 589, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). “[A]ll facts essential to imposition of the level of punishment that the defendant receives — whether the statute calls them elements of the offense, sentencing factors, or Mary Jane — must be found by the jury beyond a reasonable doubt.” Id. at 610, 122 S.Ct. 2428 (Scalia, J., concurring). Thus, the primary reason that I believe Supreme Court review is necessary in this case is because the district court’s decision, and our panel opinion affirming it, do not heed the clear trend that Crawford and Ring represent.
However, even if my view on the reach of the Confrontation Clause is incorrect, Supreme Court review is still vital in order to resolve the tension in current death penalty doctrine and to achieve uniformity across federal prosecutions. The panel’s decision is driven in large part by the Supreme Court’s ruling in Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). That case held that under the Due Process Clause, the defendant did not have a right to confront his accusers during New York’s death sentencing procedure, in which a judge had discretion to reject a jury-imposed life sentence for a death sentence. Id. The reason I respectfully disagree with the majority opinion is that since Williams, several lines of Supreme Court cases have created a sea change in death penalty procedure and Sixth Amendment doctrine. See Crawford, 541 U.S. 36, 124 S.Ct. 1354 (overruling precedent to find that reliability finding cannot substitute for cross-examination); Ring, 536 U.S. 584, 122 S.Ct. 2428 (overruling precedent to find that Sixth Amendment can apply during sentencing); Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (holding that death penalty cannot be imposed using sentencing procedures that create a risk of arbitrary and discriminatory enforcement). In fact, Williams was decided before it was even accepted that the Sixth Amendment applied to state sentencing procedures in the first place. Thus, while the majority and I disagree on the reach of the Confrontation Clause, it is clear that there is tension in Supreme *418 Court case law. Ring and Crawford suggest a broader understanding of Sixth Amendment rights and Furman creates more muscular requirements for death sentencing procedure, and these developments postdate the Williams decision. While Williams has not been overruled, this tension suggests that it must be revisited in light of our modern understanding of the Sixth Amendment and the quality of procedure necessary for the government to take a man’s life.
More importantly, this tension in Supreme Court case law has fostered a lack of uniformity in federal death sentencing procedure that creates intolerable unfairness. The end result is that a defendant’s constitutional rights depend on the whims or strategic maneuvering of the prosecutor. In the absence of Supreme Court guidance, district courts across the country have reached conflicting views on whether the Confrontation Clause applies throughout a Federal Death Penalty Act trial, with some courts adopting my view and others adopting the majority’s view that the rights only apply to the initial stage of capital sentencing. Compare United States v. Umaña, 707 F.Supp.2d 621, 633 (W.D.N.C.2010) (finding Confrontation Clause rights in first stage of federal capital sentencing but not the second stage), with United States v. Stitt, 760 F.Supp.2d 570, 581-82 (E.D.Va.2010) (finding Confrontation Clause rights in both stages of federal capital sentencing), and United States v. Sablan, 555 F.Supp.2d 1205 (D.Colo.2007) (same). Circuit court judges, too, have disagreed on this precise issue.* The result is that in federal capital trials — the most important possible proceeding of a defendant’s life — the scope of a defendant’s Sixth Amendment rights depends on the district in which the case is brought. See, e.g., Umaña, 707 F.Supp.2d at 633 (“Absent guidance from the Supreme Court or the Fourth Circuit, the district courts are left to determine this issue.”); United States v. Mills, 446 F.Supp.2d 1115, 1122 (C.D.Cal.2006) (noting its struggle “to apply the Supreme Court’s decision in Crawford ” and lamenting that “recent Supreme Court decisions complicate the matter”). Thus, even if my view is wrong, Supreme Court review is necessary to ensure fairness and uniformity in federal death cases. The scope of a defendant’s Sixth Amendment rights should not depend on the venue in which a case is brought.
Justice Scalia has lamented that “the repeated spectacle of a man’s going to his death” without the Sixth Amendment protection of jury factfinding “aceelerate[s]” the “perilous decline” of “our people’s traditional belief in the right of trial by jury.” Ring, 536 U.S. at 612, 122 S.Ct. 2428 (Scalia, J., concurring). He argues that “we render ourselves callous to the need for that protection by regularly imposing the death penalty without it.” Id. I firmly believe that these words are as true for the Confrontation Clause of the Sixth Amendment as they are for the jury clause. There is no doubt that Mr. Umaña is being sent to his death in large part based on accusations of murder for which he was never charged, much less convicted. There is no doubt that the basis for these accusations was weak and would have withered under the scorching sun *419 light of cross-examination. Mr. Umaña was never given this opportunity, however. For the Framers of the Constitution, this state of facts was unacceptable when they occurred in England in the infamous Sir Walter Raleigh trial. Crawford, 541 U.S. at 44, 62, 124 S.Ct. 1354. I consider it just as unacceptable today. Accordingly, I dissent.
Judge WYNN joins in this dissent.

 See Muhammad v. Sec’y, Fla. Dep’t of Corr., 733 F.3d 1065 (11th Cir.2013) (divided panel opinion finding that Confrontation Clause does not apply to capital cases after guilty verdict); United States v. Fields, 483 F.3d 313, 324-338 (5th Cir.2007) (same); Proffitt v. Wainwright, 685 F.2d 1227, 1252-53 (11th Cir.1982) (finding a right to cross examine the author of a psychiatric report under the Sixth Amendment during sentencing) modified, 706 F.2d 311 (expressly limiting case to psychiatric reports).